Filed 6/5/14

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S201443 |
| v. | ) | |
| | ) | Ct.App. 2/3 B231678 |
| CARMEN GOLDSMITH, | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. 102693IN |
| _____ | ) | |

Defendant was cited for failing to stop at a red traffic light at an intersection located in the City of Inglewood in violation of Vehicle Code section 21453. She was found guilty of the traffic infraction based on evidence of several photographs and a 12-second video. The evidence was generated by an automated traffic enforcement system (ATES), in common parlance referred to as a red light traffic camera. Her conviction was upheld on appeal by both the appellate division of the superior court and the Court of Appeal. We granted review to consider defendant's claim that the trial court improperly admitted the ATES evidence over her objections of inadequate foundation and hearsay. We conclude that the trial court did not abuse its discretion in finding the officer's testimony in this case provided sufficient authentication to admit the ATES evidence and that the ATES evidence was not hearsay. We affirm the judgment of the Court of Appeal.

1

## A. Statutory authorization of ATES

Local governmental agencies are statutorily authorized to equip a traffic intersection with an ATES, if the system meets certain requirements. (Veh. Code, § 21455.5.) Specifically, the system must be identified by signs visible to approaching traffic that clearly indicate the system's presence and the traffic signal light governing the intersection must have a minimum yellow light change interval as set by the state Department of Transportation for the designated approach speed. (Veh. Code, § 21455.7.)

A city council or county board of supervisors proposing to install an ATES within its jurisdiction must conduct a public hearing on the proposal prior to entering into a contract for the use of an ATES. (Veh. Code, § 21455.6, subd. (a).) If the proposal is adopted, the local jurisdiction must at each affected intersection "commence a program to issue only warning notices for 30 days" and must "also make a public announcement of the automated traffic enforcement system at least 30 days prior to the commencement of the enforcement program." (Veh. Code, § 21455.5, subd. (b); see *People v. Gray* (2014) 58 Cal.4th 901, 904.)

"Only a governmental agency, in cooperation with a law enforcement agency, may operate" an ATES. (Veh. Code, § 21455.5, subd. (c).) To operate an ATES, the governmental agency, in cooperation with law enforcement, must develop uniform guidelines for screening and issuing violation citations, as well as for processing and storing confidential information. (Veh. Code, § 21455.5, subd. (c)(1).) It must establish procedures to ensure compliance with such guidelines. (*Ibid*.) The governmental agency, in cooperation with a law enforcement agency, must also (a) establish guidelines for selection of a location, (b) ensure that the equipment is regularly inspected, (c) certify that the equipment is properly

installed and calibrated and is operating properly, (d) regularly inspect and maintain the warning signs, (e) oversee the establishment or change of signal phases and signal timing, and (f) maintain controls necessary to ensure that only those citations that have been reviewed and approved by law enforcement are delivered to violators. (*Id*., subd. (c)(2)(A), (B), (C), (D), (E), & (F).)

The statutory scheme allows the governmental agency to contract out these described operational activities or duties "if it maintains overall control and supervision of the system." (Veh. Code, § 21455.5, subd. (d).) But this is subject to an important qualification. The governmental agency may not contract out to "the manufacturer or supplier of the automated traffic enforcement system" certain of the described duties. (*Ibid.* [providing that the activities specified in Veh. Code, § 21455.5, subd. (c)(1) & (2)(A), (D), (E), & (F) may not be contracted out to the ATES manufacturer or supplier].) The only duties that may be contracted out to the ATES manufacturer or supplier are the activities of "[e]nsuring that the equipment is regularly inspected" and "[c]ertifying that the equipment is properly installed and calibrated, and is operating properly." (Veh. Code, § 21455.5, subds. (c)(2)(B), (C), (d).)

A contract between a governmental agency and an ATES manufacturer or supplier entered into, renewed, extended or amended on or after January 1, 2004, is statutorily prohibited from including a "provision for the payment or compensation to the manufacturer or supplier based on the number of citations generated, or as a percentage of the revenue generated, as a result of the use of the equipment." (Veh. Code, § 21455.5, subd. (h)(1); see *id*., former subd. (g), as amended by Stats. 2003, ch. 511, § 1, p. 3925 [applicable at the time of defendant's citation].)

3

**B. The evidence submitted in this case**

A notice to appear was issued to defendant pursuant to the City of Inglewood's implementation of the automated traffic enforcement statutes we have described. (Veh. Code, §§ 21455.5–21455.7.) The citation alleged that on March 13, 2009, defendant failed to stop at a red traffic light located at the intersection of Centinela Avenue and Beach Avenue in the City of Inglewood (Inglewood). Defendant entered a plea of not guilty.

At the court trial held before a traffic commissioner, only one witness testified. Dean Young, an investigator with the Inglewood Police Department, testified that he was assigned to the traffic division in red light camera enforcement, and had more than six years of experience in that assignment. Young testified that defendant's citation was the result of the red light camera program first implemented by Inglewood in 2003.

Young testified that Inglewood's ATES was operated by the police department, but was maintained by Redflex Traffic Systems, Inc. (Redflex). Based on his experience and the knowledge that he acquired from city engineers regarding how the traffic signals and system work and from Redflex regarding how the ATES works, Young testified that the computer-based digital camera system operates "independently" and records events occurring within an intersection after the traffic signal has turned red. Young stated that the ATES information is stored as it is "reported" on the hard disc of a computer at the scene. According to Young, Redflex technicians retrieve that computerized information periodically throughout the day through an Internet connection. A police officer then reviews all photographs before a citation is printed or mailed.

Young explained the photos and video images that are recorded and produced by the ATES as follows. There are three photographs taken, plus a 12-second video. The first photograph taken by the ATES camera, referred to as a

4

"previolation" photograph, shows the vehicle at or before the crosswalk or limit line for the intersection with the traffic signal shown in the background during its red phase. The second photograph, referred to as a "postviolation" photograph, shows the vehicle within the intersection either in the process of making a right turn or going straight through the intersection. The third photograph shows the vehicle's license plate. A data bar is imprinted on all the photographs by the ATES to show the date, time, location, and how long the light had been red at the time of the photograph. The 12-second video shows the approach and progression of the vehicle through the intersection.

Young testified, based on the ATES evidence, that defendant's violation occurred at the intersection of Centinela Avenue and Beach Avenue on Friday, March 13, 2009. It involved a "straight through movement" by defendant. Defendant objected that the photographs did not establish that she was the driver of the vehicle depicted in the photographs because the right eye and part of the forehead of the person shown in the photograph was obscured. The trial court stated that it was satisfied that the photograph depicted defendant as the driver.

Defendant then objected to Young's testimony on the grounds of lack of foundation and hearsay. The trial court overruled the objections after defendant examined Young on voir dire. Young proceeded to testify that the data bar printed on the previolation photograph of defendant's vehicle showed the traffic light had been red for 0.27 seconds and that defendant's vehicle's approach speed was 53 miles per hour at the time the photograph was taken. According to Young, in the postviolation photograph taken 0.66 second later, defendant's vehicle was shown in the intersection while the signal light remained in the red light phase. Young testified that the 12-second video of defendant's vehicle crossing the intersection began with the signal light in its green phase and showed the transitioning of the light phases, including a four-second yellow light.

5

Defendant challenged Young's characterization of the yellow light interval as being four seconds. Asked by the court to lay a foundation for his opinion regarding the yellow light interval, Young testified that he visually inspected the traffic signal at this intersection and each of the other camera-enforced intersections on a monthly basis to ensure that the yellow phase timing complies with the minimum guidelines established by California's Department of Transportation. According to Young, on February 16, 2009, and March 16, 2009, he conducted timing checks of the signal at this intersection, which showed averages of 4.11 and 4.03 seconds, respectively. He testified that these test results were well above the 3.9 seconds established by the Department of Transportation for a 40-mile-an-hour zone.

Based on this evidence, the trial court found beyond a reasonable doubt that defendant was guilty of failing to stop at a red signal light and imposed a fine of $436.

## DISCUSSION

Photographs and video recordings with imprinted data are writings as defined by the Evidence Code. (Evid. Code, § 250.)[1] To be admissible in evidence, a writing must be relevant and authenticated. (§§ 350, 1401.) The proffered evidence must be an original writing or otherwise admissible secondary evidence of the writing's content. (§§ 1520, 1521.) And it must not be subject to any exclusionary rule. (See, e.g., § 1200.)

Defendant contends the trial court erred in admitting the ATES evidence in this case because the prosecution failed to provide the foundational testimony

---

[1] All further statutory references are to the Evidence Code unless otherwise indicated.

necessary to authenticate it and because the evidence included inadmissible hearsay. We review claims regarding a trial court's ruling on the admissibility of evidence for abuse of discretion. (*People v. Alvarez* (1996) 14 Cal.4th 155, 203, 207; *People v. Lucas* (1995) 12 Cal.4th 415, 466.) Specifically, we will not disturb the trial court's ruling "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) Applying this standard, we conclude that the trial court did not err in admitting the ATES evidence over defendant's objections.

### A. The ATES evidence was adequately authenticated

Defendant argues that the trial court erred in overruling her objection to the ATES evidence on the basis of inadequate foundation. We disagree.

Authentication of a writing, including a photograph, is required before it may be admitted in evidence. (§§ 250, 1401.) Authentication is to be determined by the trial court as a preliminary fact (§ 403, subd. (a)(3)) and is statutorily defined as "the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is" or "the establishment of such facts by any other means provided by law." (§ 1400.) The statutory definition ties authentication to relevance. As explained by the California Law Revision Commission's comment to section 1400, "[b]efore any tangible object may be admitted into evidence, the party seeking to introduce the object must make a preliminary showing that the object is in some way relevant to the issues to be decided in the action. When the object sought to be introduced is a writing, this preliminary showing of relevancy usually entails some proof that the writing is authentic — *i.e.*, that the writing was made or signed by its purported maker. Hence, this showing is normally referred to as 'authentication' of the writing."

7

(Cal. Law Revision Com. com., 29B pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1400, p. 440.) Authentication is essentially a subset of relevance. (See *Lorraine v. Markel Amer. Ins. Co.* (D.Md. 2007) 241 F.R.D. 534, 539 (*Lorraine*); 2 Broun, McCormick on Evidence (7th ed. 2013) § 212, p. 5 (McCormick).)

As with other writings, the proof that is necessary to authenticate a photograph or video recording varies with the nature of the evidence that the photograph or video recording is being offered to prove and with the degree of possibility of error. (Annot., Authentication or Verification of Photograph as Basis for Introduction in Evidence (1950) 9 A.L.R.2d 899, 900.) The first step is to determine the purpose for which the evidence is being offered. The purpose of the evidence will determine what must be shown for authentication, which may vary from case to case. (2 McCormick, *supra*, § 221, pp. 82-83.) The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered. (*People v. Valdez* (2011) 201 Cal.App.4th 1429, 1434-1435 (*Valdez*).) Essentially, what is necessary is a prima facie case. "As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility." (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 321.)

Here the ATES evidence was offered to show what occurred at a particular intersection in Inglewood on a particular date and time when the traffic signal at the intersection was in its red phase. The ATES evidence was offered as substantive proof of defendant's violation, not as demonstrative evidence supporting the testimony of a percipient witness to her alleged violation. We have long approved the substantive use of photographs as essentially a "silent witness" to the content of the photographs. (*People v. Bowley* (1963) 59 Cal.2d 855, 860.) As we stated in *Bowley*, "[t]o hold otherwise would illogically limit the use of a

8

device whose memory is without question more accurate and reliable than that of a human witness. It would exclude from evidence the chance picture of a crowd which on close examination shows the commission of a crime that was not seen by the photographer at the time. It would exclude from evidence pictures taken with a telescopic lens. It would exclude from evidence pictures taken by a camera set to go off when a building's door is opened at night." (*Id.*, at p. 861.)

A photograph or video recording is typically authenticated by showing it is a fair and accurate representation of the scene depicted. (*People v. Gonzalez* (2006) 38 Cal.4th 932, 952; *People v. Cheary* (1957) 48 Cal.2d 301, 311-312.) This foundation may, but need not be, supplied by the person taking the photograph or by a person who witnessed the event being recorded. (*People v. Mehaffey* (1948) 32 Cal.2d 535, 555; *People v. Doggett* (1948) 83 Cal.App.2d 405, 409; 2 Witkin, Cal. Evidence (5th ed. 2012) Documentary Evidence, § 7, pp. 154-156 (Witkin).) It may be supplied by other witness testimony, circumstantial evidence, content and location. (*Valdez, supra,* 201 Cal.App.4th at p. 1435; *People v. Gibson* (2001) 90 Cal.App.4th 371, 383; see *People v. Skiles* (2011) 51 Cal.4th 1178, 1187; Witkin, *supra*, at pp. 154-155.) Authentication also may be established "by any other means provided by law" (§ 1400), including a statutory presumption. (Cal. Law Revision Com. com., *supra*, foll. § 1400, p. 440 ["The requisite preliminary showing may also be supplied by a presumption."].)

The People argue that sections 1552 and 1553 provide such a presumption of authenticity for ATES images and data. The People are correct that sections 1552 and 1553 are applicable here. These statutes' presumptions partly, but not completely, supply the foundation for admission of ATES evidence.

Subdivision (a) of section 1553 provides, as pertinent here, that "[a] printed representation of images stored on a video or digital medium is presumed to be an accurate representation of the images it purports to represent. . . . If a party to an

9

action introduces evidence that a printed representation of images stored on a video or digital medium is inaccurate or unreliable, the party introducing the printed representation into evidence has the burden of proving, by a preponderance of evidence, that the printed representation is an accurate representation of the existence and content of the images that it purports to represent." Subdivision (a) of section 1552 provides a similar presumption for "[a] printed representation of computer information or a computer program." In 2012, the Legislature added a subdivision (b) to both sections to expressly clarify the applicability of the statutes to printed representations of video or photographic images stored by an ATES and printed representations of computer-generated information stored by an ATES. (§§ 1552, subd. (b) ["Subdivision (a) applies to the printed representation of computer-generated information stored by an automated traffic enforcement system"], 1553, subd. (b) ["Subdivision (a) applies to the printed representation of video or photographic images stored by an automated traffic enforcement system"]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1303 (2011-2012 Reg. Sess.) as amended May 29, 2012, p. 4, par. 8; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1303 (2011-2012 Reg. Sess.) as amended June 26, 2012, p. 14.)[2]

Sections 1552 and 1553 were added to the Evidence Code as part of the 1998 legislation that repealed the best evidence rule (former § 1500) and adopted the secondary evidence rule (§§ 1520-1523; Stats. 1998, ch. 100, §§ 4, 5, pp. 634-

---

[2] Because the statutes were intended to be declarative of existing law, no question of retroactive application is presented. (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471-472; see *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922-923, 930.)

635.)[3]  Under the secondary evidence rule, the content of a writing may now be proved either "by an otherwise admissible original" (§ 1520) or by "otherwise admissible secondary evidence." (§ 1521, subd. (a); see *People v. Skiles, supra,* 51 Cal.4th at p. 1187.)  Sections 1552 and 1553 permit the writings that they describe to be introduced as secondary evidence.  Thus, the presumptions in sections 1552 and 1553 eliminate the basis for any objection that a printed version of the described writings is not the "original" writing.

Because sections 1552 and 1553 provide a presumption for both "the existence and content" of computer information and digital images that the printed versions purport to represent (§§ 1552, subd. (a), 1553, subd. (a)), the presumptions operate to establish, at least preliminarily, that errors in content have not been introduced in the course of printing the images and accompanying data. As the court in *People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1450 (*Hawkins*) explained, the presumptions essentially operate to establish that "a computer's print function has worked properly."  As applicable here, the presumptions provided by sections 1552 and 1553 support a finding, in the absence of contrary evidence, that the printed versions of ATES images and data are accurate representations of the images and data stored in the ATES equipment.

---

[3]  Section 1552 continues the provisions of former section 1500.5, subdivisions (c) and (d) without substantive change, except that the reference to " 'best available evidence' " in former section 1500.5, subdivision (c) is changed to " 'an accurate representation,' " "due to the replacement of the Best Evidence Rule with the Secondary Evidence Rule." (Cal. Law Revision Com. com., 29B pt. 4 West's Ann. Evid. Code (2014 supp.) foll. § 1552, p. 233.)  Section 1553 continues a portion of former section 1500.6 without substantive change, except for a similar change in terminology. (Cal. Law Revision Com. com., 29B pt. 4 West's Ann. Evid. Code (2014 supp.) foll. § 1553, p. 235.)

We reject defendant's contention that application of these presumptions violate her right to constitutional due process as described in *Western & Atlantic Railroad v. Henderson* (1929) 279 U.S. 639, 642-644. The court in *Henderson* held invalid a statutory rebuttable presumption in a civil case for lack of a rational connection between the ultimate fact presumed and the fact actually placed in evidence. (See *Lavine v. Milne* (1976) 424 U.S. 577, 585.) In the criminal context, however, a due process challenge to an evidentiary presumption requires us to distinguish between mandatory presumptions, which either can be conclusive or rebuttable, and permissive inferences. (*Francis v. Franklin* (1985) 471 U.S. 307, 313-315.) Mandatory presumptions will violate due process if they relieve the prosecution of the burden of persuasion on an element of the offense. (*Patterson v. New York* (1977) 432 U.S. 197, 215; see *Sandstrom v. Montana* (1979) 442 U.S. 510, 520-524.) Permissive inferences violate due process only if the permissive inference is irrational. (*Francis, supra,* at pp. 314-315; *Ulster County Court v. Allen* (1979) 442 U.S. 140, 157-163; *People v. Moore* (2011) 51 Cal.4th 1104, 1131-1132.) The rebuttable presumptions set forth in sections 1552 and 1553 affect the burden of producing evidence regarding a preliminary fact necessary for the admission of evidence. As their presumptions affect the admissibility of the described writings when offered by any party, but do not require any weight to be given to the evidence if admitted, sections 1552 and 1553 do not reduce the prosecution's burden of proof to show defendant's violation beyond a reasonable doubt. They establish only permissive inferences, which, being logically grounded on advances in technology, are not irrational. (*Francis, supra,* at pp. 314-315; *Moore, supra,* at p. 1132.)[4] Contrary to defendant's

---

**4** Defendant contends it would be arbitrary in this case to assume that the ATES evidence is reliable because Redflex has previously "falsified evidence." In

*(Footnote continued on next page.)*

argument, these presumptions do not deny defendant a fair opportunity to rebut the presumed accuracy or reliability of the offered evidence. (*Henderson, supra,* 279 U.S. at p. 642.)[5]

Although we reject defendant's constitutional challenge, it is important to recognize that the presumptions in sections 1552 and 1553 do not in themselves fully supply the necessary foundation for admission of ATES evidence. The secondary evidence rule does not "excuse[] compliance with Section 1401 (authentication)." (§ 1521, subd. (c).) "[T]o be 'otherwise admissible,' secondary

---

*(Footnote continued from previous page.)*

support of this claim, defendant requested that we take judicial notice of documents she obtained from the Arizona secretary of state reflecting the investigation, and consequent revocation of the commission, of an Arizona notary public who was found to have improperly notarized a Redflex "deployment form" for a speed photo radar vehicle. It would be pure conjecture to conclude that all evidence generated by Redflex ATES technology and handled by Redflex employees for Inglewood is suspect because of the actions of a single errant notary public in a different state regarding a different type of technology and documentation. We have denied defendant's request for judicial notice and reject her argument that the involvement of Redflex in this case requires a different constitutional conclusion.

[5] Claiming that traffic court defendants appear almost universally in propria persona and that they lack the motive, means, or opportunity to engage in discovery prior to trial or to spend thousands of dollars on expert fees, defendant argues the presumptions stated in sections 1552 and 1553 deny traffic court defendants a fair opportunity to "repel" the presumptions. We will not speculate that traffic defendants lack motivation to contest their tickets. And, contrary to defendant's claim, traffic defendants have sufficient means and opportunity to contest their alleged violation because individuals charged with infractions are accorded the same rights as individuals charged with misdemeanors to subpoena witnesses and documents, to present testimony and other evidence, and to cross-examine the prosecution's witnesses. (Pen. Code, § 19.7 ["Except as otherwise provided by law, all provisions of law relating to misdemeanors shall apply to infractions . . . ."].)

evidence must be authenticated." (*People v. Skiles, supra,* 51 Cal.4th at p. 1187; see § 1401, subd. (b) ["Authentication of a writing is required before secondary evidence of its content may be received in evidence."].)

Here, Young's testimony was adequate to show that the ATES photographs at issue were from Inglewood's ATES equipment located at the corner of Centinela and Beach Avenues. From his explanation regarding the independent operation of the ATES camera system, it can be reasonably inferred that the ATES system automatically and contemporaneously recorded the images of the intersection and the data imprinted on the photographs when it was triggered. Young was not asked anything about the city's or the police department's records or supervision of Redflex's maintenance or certification of the equipment.[6] Defendant does not argue that Young's testimony was insufficient to demonstrate that the evidence was properly received in the normal course and manner of Inglewood's operation of its ATES program. Finally, we note that the content of the photographs themselves may be considered and here the content supplied

---

[6] Young was asked when the "photo system" was last calibrated. Young answered that "there is no calibration of this [photo] system." Defendant argues that such testimony revealed Inglewood's failure to comply with the statutory requirements that the ATES equipment be regularly inspected and certified to have been properly installed and calibrated and to be operating properly. (Veh. Code, § 21455.5, subds. (c)(2)(B), (C), d.) We do not read the testimony in this way. In context, it appears Young understood that question and the followup question regarding calibration to ask only about the connection between the ATES camera and the traffic signal. He responded that the systems operate independently and that the only connection is an electrical connection that lets the camera know that the light is in its red phase. Defense counsel did not clarify or pose further followup questions regarding calibration of the ATES system. Counsel did not ask any questions concerning Inglewood's or the police department's oversight of Redflex's maintenance and certification of the installed ATES equipment at this intersection.

14

further support for a finding that the images were genuine.**7**  Indeed, at oral argument, defendant's counsel conceded that the ATES photographs in this case actually depicted his client in the intersection.  Accordingly, we conclude that, in conjunction with the operation of the presumptions of sections 1552 and 1553, sufficient evidence was submitted to the court to sustain a finding (§ 403, subd. (a)(3)) that the ATES evidence "is the writing that the [prosecution] claimed it is" (§ 1400) and the trial court properly exercised its discretion to admit the evidence.

Defendant claims, however, that in this case involving *digital* images it was necessary for the prosecution as part of its foundational showing to additionally present the testimony of a Redflex technician regarding the operation and maintenance of the system that generated the ATES evidence because digital images are more readily and inexpensively subject to manipulation, and yet at the same time, such manipulations are more difficult to detect, compared with an analog alteration.  We disagree that the testimony of a Redflex technician or other witness with special expertise in the operation and maintenance of the ATES computers was required as a prerequisite for authentication of the ATES evidence.

Contrary to defendant's assertion, the record contains no evidence that the ATES evidence was materially altered, enhanced, edited or otherwise changed;

---

**7**     Specifically, given Young's testimony regarding how the ATES system operates, the fact that in this case it produced a photograph showing defendant driving her vehicle at or before the limit line with the signal light in its red phase and then another photograph of defendant driving her vehicle in the intersection with the signal light in its red phase, as well as a 12-second video showing defendant's vehicle crossing the intersection and the transition of the traffic signal light phases, including a four-second yellow light, is circumstantial evidence that the system was working properly.

15

rather it consisted of entirely automatically produced photos and video and contemporaneously recorded data. No elaborate showing of accuracy is required. (See 2 McCormick, *supra*, § 227, p. 111 [accuracy of an individual computer's basic operations will not be scrutinized unless specifically challenged, and even perceived errors go to the weight of the evidence, not its admissibility].) We decline to require a greater showing of authentication for the admissibility of digital images merely because in theory they can be manipulated. (See *Owens v. State* (Ark. 2005) 214 S.W.3d 849, 854 [refusal to impose a higher burden of proof for admissibility of still photographs taken from a store surveillance camera's videotape merely because digital images are easier to manipulate].) We have not required testimony regarding the " 'acceptability, accuracy, maintenance, and reliability of . . . computer hardware and software' " in similar situations. (*People v. Martinez* (2000) 22 Cal.4th 106, 132, quoting *People v. Lugashi* (1988) 205 Cal.App.3d 632, 642; accord, *People v. Nazary* (2010) 191 Cal.App.4th 727, 755.) The standard foundational showing for authentication of a photograph, video, or other writing will suffice for ATES images and data information.[8]

---

[8]     *People v. McWhorter* (2009) 47 Cal.4th 318, 364-367, and *State v. Swinton* (Conn. 2003) 847 A.2d 921, 942-945, on which defendant relies for her contention that expert testimony regarding the accuracy and reliability of the ATES computer process should be required, are distinguishable because they involved computer-*enhanced* photographic images. Similarly, *People v. Duenas* (2012) 55 Cal.4th 1, 20-21, is inapposite because it involved a computer animation and the comments defendant relies on were directed at computer simulations. Computer animations and simulations are types of digital imaging technology distinctly different from the ATES-generated evidence involved here. Finally, *People v. Beckley* (2010) 185 Cal.App.4th 509, 514-516, is distinguishable because the issue there concerned the admission of a photograph found on a social media Web site, which presented questions of accuracy and reliability different from the evidence here. These cases serve to demonstrate the need to carefully assess the specific nature of the photographic image being offered into evidence and the purpose for which it is

*(Footnote continued on next page.)*

We conclude that the trial court did not abuse its discretion in overruling defendant's objection of lack of foundation.

## B. ATES evidence does not constitute hearsay

Defendant contends that some of the data bar information imprinted on the ATES photographs constitutes hearsay that does not come within either the business records or public records exception to the hearsay rule. She asserts that the trial court erred in overruling her objection raising that ground for exclusion of the evidence. We disagree.

As we have explained, the evidence before the trial court reflects that the digital photographs were taken automatically by the ATES. Admittedly, the ATES must be programmed to activate when certain criteria are met, but it is undisputed that at the time any images are captured by the digital image sensors in the ATES cameras, there is no Inglewood city employee, law enforcement officer or Redflex technician present watching the intersection and deciding to take the photographs and video.[9] The ATES routinely monitors the intersection without

---

*(Footnote continued from previous page.)*

being offered in determining whether the necessary foundation for admission has been met.

[9] Redflex has filed an amicus curiae brief with this court in which it describes its ATES technology in much more detail than provided to the trial court. We decline to consider the technical details of the ATES provided by Redflex in its brief. Not only is Redflex's description not a matter of "common knowledge" (§ 452, subd. (g)) or a proposition "not reasonably subject to dispute and . . . capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy" (*id*., subd. (h)) so as to come within the parameters of permissible judicial notice, it would be inappropriate to take judicial notice of additional facts that the prosecution did not introduce at trial. (*People v. Davis* (2013) 57 Cal.4th 353, 360.)

17

human presence at the site. When the camera is activated and takes the video and the three digital photographs of the intersection, the computer also records various data regarding the captured incident, including the date, time, location, and length of time since the traffic signal light turned red. The information is imprinted on a data bar on the photographs. The photographs, video and data bar information are entirely computer produced.

Evidence Code section 1200 defines hearsay as "evidence of a *statement* that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (§ 1200, subd. (a), italics added.) A statement, in turn, is defined as an "oral or written verbal expression or . . . nonverbal conduct *of a person* intended by him as a substitute for oral or written verbal expression." (§ 225, italics added.) " 'Person' includes a natural person, firm, association, organization, partnership, business trust, corporation, limited liability company, or public entity." (§ 175.)

The ATES-generated photographs and video introduced here as substantive evidence of defendant's infraction are not statements of a person as defined by the Evidence Code. (§§ 175, 225.) Therefore, they do not constitute hearsay as statutorily defined. (§ 1200, subd. (a).) Because the computer controlling the ATES digital camera automatically generates and imprints data information on the photographic image, there is similarly no statement being made by a person regarding the data information so recorded. Simply put, "[t]he Evidence Code does not contemplate that a machine can make a statement." (*Hawkins*, *supra*, 98 Cal.App.4th at p. 1449; accord, *People v. Lopez* (2012) 55 Cal.4th 569, 583, agreeing with *United States v. Moon* (7th Cir. 2008) 512 F.3d 359, 362 [" 'the instruments' readouts are not "statements" ' "] & *U.S. v. Washington* (4th Cir. 2007) 498 F.3d 225, 231 [" 'the raw data generated by the machines do not constitute "statements," and the machines are not "declarants" ' "]; *U.S. v.*

18

*Hamilton* (10th Cir. 2005) 413 F.3d 1138, 1142-1143 [computer-generated header information on digital images does not constitute hearsay]; see Wolfson, *"Electronic fingerprints": Doing Away with the Conception of Computer-Generated Records as Hearsay* (2005) 104 Mich. L.Rev. 151, 159-160.)

Our conclusion that the ATES evidence does not constitute hearsay is confirmed by recent legislative action intended to clarify the non-hearsay status of ATES evidence. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1303 (2011-2012 Reg. Sess.), *supra*, p. 14.) As amended in 2012, Vehicle Code section 21455.5, subdivision (e), now specifically provides that "[t]he printed representation of computer-generated information, video, or photographic images stored by an automated traffic enforcement system does *not* constitute an out-of-court hearsay statement by a declarant under Division 10 (commencing with Section 1200) of the Evidence Code." (Italics added.)[10]

Nevertheless, defendant argues that the ATES evidence is "unquestionably testimonial" and as a result, she contends, its admission violated her federal constitutional right to confrontation. As defendant later appears to acknowledge, *People v. Lopez*, *supra*, 55 Cal.4th at page 583, undermines both her hearsay and confrontation clause arguments. Consistent with *Lopez*, we conclude that our determination that the ATES evidence is not hearsay necessarily requires the rejection of defendant's confrontation claims. (*Ibid.* ["Because, unlike a person, a machine cannot be cross-examined, here the prosecution's introduction into evidence of the machine-generated printouts . . . did not implicate the Sixth Amendment's right to confrontation."].)

---

**10**     Again, because we find the statute to be declarative of existing law, no question of retroactive application is presented. (*McClung v. Employment Development Dept., supra,* 34 Cal.4th at pp. 471-472.)

19

**C. There is no reason to adopt a heightened requirement for red light camera traffic cases**

Defendant contends that the dynamics of the traffic court system — which she contends routinely rushes defendants through trial of their cases before traffic commissioners who generally discount a defendant's individual recollection of the events and accept the prosecution's evidence as "gospel" — provides a basis for imposing and enforcing strict evidentiary requirements for obtaining red light camera convictions. Defendant asks that, in order to restore the public's trust in the integrity of the traffic court system, we exercise our inherent powers to "regulate criminal procedure" by requiring "proper" testimony regarding "questionable" ATES photos and data prepared by Redflex before the photos and data may be admitted into evidence. Any other rule would, according to defendant, allow a relaxed standard for red light camera infractions.

Although defendant claims to be advocating an evidentiary standard commensurate with the standard applicable in other criminal contexts, she is in essence asking that we adopt a special rule for red light camera cases based on her suspicions regarding the operation of ATES by local jurisdictions contracting with Redflex. As we have earlier noted, the Penal Code provides that "[e]xcept as otherwise provided by law, all provisions of law relating to misdemeanors shall apply to infractions" (Pen. Code, § 19.7), but we find no legal ground for adopting *heightened* evidentiary requirements for infractions, specifically one type of alleged infraction — traffic violations in red light camera cases. Nor does the relative speed and informality of traffic court support imposing unique requirements for the admission of ATES evidence. Years ago we recognized that "it is in the interests of the defendant, law enforcement, the courts, and the public to provide simplified and expeditious procedures for the adjudication of less serious traffic offenses." (*People v. Carlucci* (1979) 23 Cal.3d 249, 257.)

20

We decline to adopt special rules for the ATES digital evidence offered in trials of red light traffic camera cases.

**CONCLUSION**

The judgment of the Court of Appeal is affirmed.

CANTIL-SAKAUYE, C. J.

WE CONCUR:

BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
KENNARD, J.*

---

\* Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Goldsmith
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 203 Cal.App.4th 1515
**Rehearing Granted**

_____

**Opinion No.** S201443
**Date Filed:** June 5, 2014
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** John Robert Johnson, Commissioner

_____

**Counsel:**

Wilson, Elser, Moskowitz, Edelman & Dicker, Robert Cooper; Law Offices of John J. Jackman and John J. Jackman for Defendant and Appellant.

Kin Wah Kung as Amicus Curiae on behalf of Defendant and Appellant.

Law Offices of Joseph W. Singleton and Joseph William Singleton for Mishel Rabiean as Amicus Curiae on behalf of Defendant and Appellant.

The Law Office of Richard Allen Baylis, R.A. Baylis & Associates, R. Allen Baylis; The Ticket Dump and Patrick T. Santos as Amici Curiae on behalf of Defendant and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker and Robert Cooper for David Martin as Amicus Curiae on behalf of Defendant and Appellant.

Cal Saunders, City Attorney; Best Best & Krieger, Dean R. Derleth, John D. Higginbotham and Kira L. Klatchko for Plaintiff and Respondent.

Joseph Straka, Interim City Attorney (Santa Ana), José Sandoval, Chief Assistant City Attorney, and Melissa Crosthwaite, Deputy City Attorney, for City of Santa Ana as Amicus Curiae on behalf of Plaintiff and Respondent.

Dapeer, Rosenblit & Litvak, William Litvak and Caroline K. Castillo for City of West Hollywood, City of Beverly Hills and City of Culver City as Amici Curiae on behalf of Plaintiff and Respondent.

Sheppard, Mullin, Richter & Hampton, Gregory P. Barbee, Michael D. Stewart, John M. Hynes, Jessica A. Johnson; Woodruff, Spradlin & Smart and Jason McEwen for Redflex Traffic Systems, Inc., and City of Garden Grove as Amici Curiae on behalf of Plaintiff and Respondent.

Richards, Watson & Gershon, T. Peter Pierce and Andrew J. Brady for League of California Cities as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Robert Cooper
Wilson, Elser, Moskowitz, Edelman & Dicker
555 South Flower Street, 29th Floor
Los Angeles, CA  90071
(213) 443-5100

Kira L. Klatchko
Best Best & Krieger
74-760 Highway 111, Suite 200
Indian Wells, CA  92210
(760) 568-2611