Filed 10/5/23  In re S.B. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.B. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E080777 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ2200100) |
| v. | OPINION |
| I.E., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton, Judge.  Affirmed.

Marisa L.D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

Irene A.E. (Mother) appeals from an order of the juvenile court finding that she possessed several firearms in violation of a restraining order. She argues that (1) the court erred by admitting certain evidence and (2) the finding that she had firearms in her immediate possession or control is not supported by substantial evidence. (Fam. Code, § 6322.5, subd. (a).) We affirm.

BACKGROUND

I. *Detention, Jurisdiction, and Disposition*

Riverside County Department of Public Social Services (DPSS) received referrals in late 2021 and early 2022 alleging that 10-year-old K.B. and 13-year-old S.B. were at risk of abuse or neglect. Israel B. (Father) and Mother had joint legal custody of the children, but Father had sole physical custody of them, and they had occasional weekend visits with Mother. According to the referrals, Father and his former partner, Kimberly A., fought frequently, Father was an alcoholic and drove the children while under the influence, and S.B. had recently hit her head on a window sill during a fight with Father. Mother disclosed prior domestic violence incidents with Father, and she said that she had used methamphetamine and alcohol in the past but was currently sober.

DPSS filed a petition alleging that S.B. and K.B. were persons described by Welfare and Institutions Code section 300, subdivision (b)(1). At the detention hearing in March 2022, the court detained both children from Father, detained K.B. from Mother, and placed S.B. in Mother's home. DPSS placed K.B. with paternal aunt.

At the jurisdiction and disposition hearing in May 2022, the court found true allegations that both parents had a history of substance abuse, Father engaged in acts of

2

violence in the presence of the children, and both parents had a history of substantiated child welfare referrals and had failed to benefit from previous services.  The court removed the children from the custody of both parents and ordered reunification services for both parents.  DPSS placed S.B. with K.B. in paternal aunt's home.

II. *Six-Month Review and Father's Request for a Restraining Order*

In October 2022, Mother was arrested and charged with first degree burglary, contempt of court, and violating a protective order.  (Pen. Code, §§ 459, 166, subd. (c)(1), 273.6, subd. (a).)  According to Father, Mother broke into his home and stole his security cameras.  The court in Mother's criminal case issued a protective order protecting Father from Mother.

DPSS reported that Father had successfully completed most of his services.  He had progressed to unsupervised overnight visits with the children, and they were eager to return to his care.  DPSS recommended an extended 30-day visit with Father before transitioning to placement in his home with family maintenance services.

At the six-month review hearing in December 2022, the court authorized the 30-day visit with Father and continued the hearing.  That same day, Father filed a request for a restraining order protecting him and the children from Mother, so the court addressed that request as well.  Father's papers stated that the criminal protective order already in place protected him but not the children, Mother had recently been released from custody, and Father hoped the children would soon be in his care.  The court issued a temporary restraining order protecting Father and the children.  The court questioned both parents under oath regarding firearms.  Father stated that to his knowledge, Mother

3

did not own, possess, or have access to firearms. Mother likewise stated that she did not own, possess, or have access to firearms. The court informed Mother that as a restrained party, she could not own or possess any firearms.

In preparation for the continued review hearing, DPSS reported that the extended visit with Father had gone well. Mother supported returning the children to Father's care.

The court continued reunification services for both parents at the continued review hearing. The court also authorized the extended visit with Father to continue for another 30 days and gave DPSS the authority to place the children in his home with family maintenance services.

At the same hearing, the court granted Father's request for a permanent restraining order. The court again questioned Father under oath about Mother's access to firearms, and he again said that to his knowledge, Mother did not own, possess, or have access to firearms. Mother was not present at the hearing. The court then asked whether anyone in the audience had information on the topic, and paternal aunt responded. According to paternal aunt, roughly one year earlier, Mother posted photos of firearms on Facebook. The court stated that it had run a search on CLETS (California Law Enforcement Telecommunications System), and there were no firearms registered to Mother. But in light of the information from paternal aunt, the court set a hearing to determine whether Mother had firearms within her "immediate possession or control." (Fam. Code, § 6322.5, subd. (a).)

III.  *Firearms Hearing*

The court held the firearms hearing several days later in January 2023.  Paternal aunt, Father, and Mother's friend, John R., testified.

A.  *Evidence at the Hearing*

Mother had a business called A. Cleaning Services.[1]  The business name was also the name of Mother's Instagram account.  Paternal aunt did not follow Mother on Instagram, but Kimberly, Father's former partner, followed Mother.  Kimberly and paternal aunt were friends.

Paternal aunt gave Father's counsel copies of three screenshots reflecting posts on Instagram.  Two of the screenshots depicted posts from an account named "_blanket_girl4" (blanket girl).  Paternal aunt did not know whether the blanket girl account belonged to Mother.  One of the blanket girl posts depicted a flyer for a gun show in San Bernardino.  The second blanket girl post depicted firearms in the back of Mother's car; paternal aunt and Father both identified the car as belonging to Mother.

The third screenshot depicted a post from the A. Cleaning Services account.  That post was the same photo of firearms in the back of Mother's car that the blanket girl account had posted.  The caption on the A. Cleaning Services' post stated, "My toys."

Paternal aunt saw the actual Instagram posts reflected in the screenshots, and the screenshots showed the posts.  Kimberly showed paternal aunt the posts and took all of the screenshots.  Paternal aunt and Kimberly worked together to write notes on the

---

[1]  The business name includes Mother's first surname.  We use the initial "A." in place of the surname to protect the anonymity of the children.

5

screenshot exhibits. Their notes on each exhibit documented the dates of the posts. Above the screenshot of the A. Cleaning Services post, they noted: "December 8, 2020—[Mother] posted the picture again this time labeling the Guns as 'My toys.'"

Paternal aunt also gave Father's counsel screenshots of text messages about selling guns. She could not explain how the text messages were connected to Mother, but Kimberly could explain that. Kimberly gave paternal aunt those screenshots. Paternal aunt saw only the screenshots and not the text messages themselves.

John had known Mother for five to six years. They were friends and did not currently have a romantic relationship, but they had talked about getting married after Mother obtained a divorce. John helped Mother financially. He had recently spent $4,000 to bail her out of jail in November 2022. John recognized the photo of the gun show flyer posted by the blanket girl account—the photo depicted a display at his workplace. He was not familiar with the blanket girl account and had never known Mother to go by that social media handle. But he knew that the A. Cleaning Services account belonged to Mother.

John also recognized the photo of the firearms in the back of a car. He took the photo and texted it to Mother. The firearms belonged to him and were registered to him, and the photo showed them in the back of Mother's car. The photo showed three firearms, but he had at least 12 of them in the car. He borrowed Mother's car to relocate the firearms. He had a pickup truck, but he did not have room for the firearms in the cab, and he wanted to transport them in a covered vehicle. John took the photo because Mother was curious about what firearms he had. He still owned them and had a third

6

party storing them in a secure location. That third party was a police officer, but he was not a federal firearms licensee, and the firearms were not stored at a law enforcement facility. John did not want to say who had the firearms because he did not want to get that person "involved in this." Mother was not with him when he relocated the firearms, and she did not know where they were located. Mother did not currently possess the firearms, she never had access to his firearms, and as far as he knew, she did not have any firearms. He would never allow Mother to borrow one of his firearms. He did not know why Mother would have referred to the firearms as her toys.

B. *Court's Ruling*

After the close of evidence, Mother objected on hearsay grounds "to the evidence that was submitted by father's counsel." She also argued that statements by paternal aunt were double hearsay in that they were "based on statements of others," including Kimberly. She further objected on due process grounds because "the other person mentioned" by paternal aunt did not testify and was not made available for cross-examination. And she argued that the screenshots lacked authentication because Kimberly provided them, Kimberly did not testify, and paternal aunt lacked personal knowledge.

The court admitted both screenshots of the blanket girl posts (the photo of the gun show flyer and the photo of the guns in the back of the car), but none of the notes on the exhibits. The court explained that although the identity of blanket girl had not been established, John's testimony had sufficiently authenticated the photos in the posts. The court admitted the screenshot of the A. Cleaning Services post, as well as the notes on the

exhibit. The court described that post as the "most damning piece of evidence." The court declined to admit or consider the screenshots of the text messages.

The court observed: "In this case, there is, frankly, compelling evidence that at one point in time mother was in possession of a number of firearms based on the photograph that she described as her toys, and I quote 'My toys.' [¶] The [A.] Cleaning Services post is extremely compelling." The court also noted that it did not find John "to be a very compelling witness." It explained: "So then I get [John] that comes in here . . . . He seems like a guy, on the hope of this romantic relationship, that would do or say anything for mother, including to his own detriment. I mean, the $4,000 that he bailed her out is, let's face it, more than a token gesture. [¶] Why he would take photos of guns that he—what makes more sense to you, that mom took photos of guns that she was transporting in her vehicle, or for some nonsensical reason [John] took photos of guns that he was transporting in the back of mom's vehicle and sent her photographs. [¶] So the more logical and compelling outcome or answer to the Court is that she took the pictures of the weapons in her car."

The court found that Mother had firearms in her possession, explaining: "Mom describes them as 'My toys.' I don't have any information that I find believable that she is no longer in possession of her toys; therefore, I'm going to be making the firearms finding against her."

The court amended the permanent restraining order to find that Mother had prohibited items, namely, "numerous" firearms "purportedly registered to John [R.]." The court also sent notice to the relevant law enforcement agencies and the Riverside

8

County District Attorney's Office that Mother had firearms in violation of a restraining order. (Judicial Council Forms, form DV-830 [Noncompliance with Firearms and Ammunition Order, or Warrant].) Mother filed a notice of appeal from the amended restraining order.

## DISCUSSION

### A. *Evidentiary Challenges*

Mother argues that the court abused its discretion by admitting the screenshots of the Instagram posts. (See *People v. Goldsmith* (2014) 59 Cal.4th 258, 266 (*Goldsmith*) [trial court's ruling on admissibility of evidence reviewed for abuse of discretion].) She asserts that (1) paternal aunt lacked personal knowledge of the screenshots, (2) the screenshots were not authenticated, (3) one of them constituted inadmissible hearsay, and (4) their admission violated her right to due process. The arguments lack merit.

#### 1. *Personal Knowledge*

The "testimony of a witness concerning a particular matter is inadmissible unless he [or she] has personal knowledge of the matter." (Evid. Code, § 702, subd. (a).) The witness's personal knowledge "may be shown by any otherwise admissible evidence," including the witness's own testimony. (*Id.*, § 702, subd. (b).) Personal knowledge means "'a present recollection of an impression derived from the exercise of the [witness's] own senses.'" (*People v. Lewis* (2001) 26 Cal.4th 334, 356.)

Mother argues that the screenshots lacked an adequate foundation because paternal aunt lacked personal knowledge of the Instagram accounts, the account owners, and the posts. But paternal aunt testified that she observed the posts themselves—not just the

screenshots of the posts—when Kimberly showed her the posts.[2]  Paternal aunt therefore had personal knowledge of the posts and whether the screenshots accurately represented the posts.  Paternal aunt also said that the A. Cleaning Services account belonged to Mother.  But even if paternal aunt had not so testified, John's testimony established that the A. Cleaning Services account belonged to Mother, and Mother does not challenge John's personal knowledge of that fact.  The court therefore did not abuse its discretion by overruling any personal knowledge objection to the A. Cleaning Services post.

As for the two blanket girl posts, none of the witnesses knew who owned that account.  However, even if the court erred by admitting the blanket girl posts, Mother fails to show that any error was prejudicial.  One of those posts was merely the same photo posted by the A. Cleaning Services account.  Because that blanket girl post was duplicative of other evidence, there is no reasonable probability that exclusion of the post would have resulted in a more favorable outcome for Mother.  (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1117 (*Rodrigues*) [admission of cumulative evidence did not prejudice the defendant].)  And Mother does not explain how she was prejudiced by admission of the second blanket girl post depicting the gun show flyer.  The court admitted it for "whatever evidentiary value" it had, but the court did not appear to assign any value to the post.  The court did not rely on

---

[2]     Mother asserts that paternal aunt did not see the Instagram posts.  That is an incorrect description of paternal aunt's testimony.  The testimony that Mother cites concerned the screenshot of a text message conversation.  Paternal aunt said that she saw only screenshots of the text messages.  The court did not admit the exhibits depicting text message conversations.

the post in its oral ruling.  In contrast, it described the A. Cleaning Services post as the "most damning piece of evidence."  We see no reasonable probability that the court would have changed its firearms finding if it had excluded the gun show flyer post.

2. *Authentication*

"Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law."  (Evid. Code, § 1400.)  A photo qualifies as a writing.  (*Id.*, §§ 100, 250.)

"A photograph or video recording is typically authenticated by showing it is a fair and accurate representation of the scene depicted."  (*Goldsmith*, *supra*, 59 Cal.4th at p. 267.)  "This foundation may, but need not be, supplied by the person taking the photograph or by a person who witnessed the event being recorded.  [Citations.]  It may be supplied by other witness testimony, circumstantial evidence, content and location."  (*Id.* at p. 268.)  All that is required for admissibility "is a prima facie case.  'As long as the evidence would support a finding of authenticity, the writing is admissible.  The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.'"  (*Id.* at p. 267.)

Evidence Code section 1553 supplies a means to authenticate printed images in part.  (*Goldsmith*, *supra*, 59 Cal.4th at p. 268.)  Under that section, a "printed representation of images stored on a video or digital medium is presumed to be an accurate representation of the images it purports to represent."  (Evid. Code, § 1553, subd. (a).)  The presumption operates "to establish, at least preliminarily, that errors in

11

content have not been introduced in the course of printing the images and accompanying data." (*Goldsmith*, at p. 269.) If a party offers evidence that the printed image "is inaccurate or unreliable," then "the party introducing the printed representation into evidence has the burden of proving, by a preponderance of evidence, that the printed representation is an accurate representation of the existence and content of the images that it purports to represent." (Evid. Code, § 1553, subd. (a).) But in the absence of contrary evidence, the presumption supports a finding that the printed versions of images are accurate representations of the images and data stored on a device. (*Goldsmith*, at p. 269.)

First, under Evidence Code section 1553, the printouts of the screenshots were presumptively accurate representations of the screenshots stored on Kimberly's device. Mother did not introduce any contrary evidence. Second, given that paternal aunt observed the actual Instagram posts, her testimony was sufficient to sustain a finding that the screenshots depicted the posts by the blanket girl and A. Cleaning Services accounts. Third, the evidence was sufficient to sustain a finding that two of the posts depicted firearms in the back of Mother's car. John claimed to have taken the photo and recognized the firearms and Mother's car, and paternal aunt and Father also recognized Mother's car in the photo. Fourth, John's testimony was sufficient to sustain a finding that the third post depicted a gun show flyer at his workplace. Sufficient evidence thus supported a finding that the screenshots were accurate representations of the Instagram posts, two of the posts were accurate representations of firearms in Mother's car, and the third post was an accurate representation of the gun show flyer.

12

Mother contends that the screenshots were not properly authenticated because there was no evidence that she owned the blanket girl account, and while John testified that the A. Cleaning Services account belonged to her, there was no evidence about who had the authority to post to that account. To the extent that the blanket girl posts were not properly authenticated, Mother has not shown that their admission prejudiced her, as already explained. And to the extent that proper authentication required a showing that Mother posted the photo to the A. Cleaning Services account, the evidence gave rise to that reasonable inference. There was no dispute that she had a business called A. Cleaning Services or that the Instagram account belonged to her. The post depicted Mother's car, and the caption of the post referred to "My toys." (See *Goldsmith*, *supra*, 59 Cal.4th at pp. 268, 271 [contents of photos may be considered in determining whether photos were authenticated].) Given that the post showed Mother's car, the poster referred to objects in Mother's car as "My toys," and the account belonged to Mother, the court could reasonably infer that Mother posted the photo. The evidence was sufficient to establish a "prima facie case" of authenticity supporting admission of the post. (*Id*. at p. 267.)

3. *Hearsay*

Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) The general rule that hearsay is inadmissible is subject to numerous exceptions, including one for statements of a party. (Evid. Code, § 1220.) "The hearsay rule does not bar statements when offered against the declarant in an action

13

in which the declarant is a party." (*People v. Horning* (2004) 34 Cal.4th 871, 898.)

Under that exception, the "only preliminary fact that is subject to dispute is the identity of

the declarant." (Assem. Com. on Judiciary, com. on Evid. Code § 403, subd. (a).) The

hearsay statement "is admissible upon the introduction of evidence sufficient to sustain a

finding that the party made the statement." (*Ibid.*) Although we review the juvenile

court's ultimate ruling on admissibility for abuse of discretion, we review the court's

conclusion regarding preliminary facts for substantial evidence. (*People v. DeHoyos*

(2013) 57 Cal.4th 79, 132.)

Mother argues that the A. Cleaning Services post was not admissible under the

hearsay exception for statements of a party, because Father failed to establish that she

was the poster. But substantial evidence supports the finding that Mother posted the

photo. As just discussed, the evidence showed that the Instagram account belonged to

Mother, the post depicted Mother's car, and the poster referred to objects in Mother's car

as "My toys." The court could reasonably infer from that evidence that Mother posted

the photo and therefore was the declarant for purposes of the hearsay exception.

Mother also asserts that the A. Cleaning Services post was inadmissible hearsay

because the notes submitted with the post ("December 8, 2020—[Mother] posted the

picture again this time labeling the Guns as 'My toys'") were prepared by Kimberly after

the post had occurred. None of that explains why the post itself was inadmissible

hearsay.

To the extent that Mother means the notes documenting the date of the post were

hearsay, she forfeited any such challenge. Mother did not object to any of the screenshot

exhibits on hearsay grounds when the witnesses were testifying. After the close of evidence, when the court asked for argument, Mother "object[ed] to the evidence that was submitted by father's counsel on evidentiary grounds." She asserted a hearsay objection as follows: "First, on evidentiary grounds, my objection[s] to the admissibility include hearsay in that the statements were created out of court in order to prove the truth of the matter asserted by [paternal aunt]." After the court gave the parties an indicated ruling on the admissibility of the screenshot exhibits, including the admissibility of the notes at issue, it stated that it would hear any additional arguments. Mother said that she had nothing to add.

We will not reverse a ruling for claimed evidentiary error unless the appellant timely objected to the evidence and made "clear the specific ground of the objection." (Evid. Code, § 353, subd. (a).) "The reason for the requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal." (*People v. Morris* (1991) 53 Cal.3d 152, 187-188; *Estate of Silverstein* (1984) 159 Cal.App.3d 221, 225 ['"Where inadmissible evidence is offered, the party who desires to raise the point of erroneous admission on appeal must *object* at the trial, *specifically* stating the grounds of his objection, and directing the objection to the *particular evidence* which he seeks to exclude'"].)

Mother's blanket objection to all of Father's evidence (which included seven exhibits) and her hearsay objection to some unspecified statements did not preserve her hearsay challenge to the notes on the A. Cleaning Services post. She had to direct her objection to the particular evidence that she wanted to exclude. Her generalized objections did not allow Father to cure any defects in the evidence or permit the court to make an informed ruling on the specific objection she now raises. (*People v. Boyette* (2002) 29 Cal.4th 381, 424.) She thus forfeited the hearsay challenge to the notes.

Even if Mother had not forfeited the argument, we would conclude that it lacks merit. Paternal aunt testified that she saw the Instagram posts, she and Kimberly wrote the notes on the exhibits together, and their notes set forth the date of each post. Her testimony established that the date in the notes was the date of the post. The portion of the notes documenting the date thus was admissible for "the nonhearsay purpose of giving context" to paternal aunt's testimony about the dates. (*People v. Maciel* (2013) 57 Cal.4th 482, 524.) Moreover, other evidence established everything else in the notes: Substantial evidence showed that Mother was the poster, and the caption of the post was evident from the face of the post itself. The notes were cumulative of other evidence in those respects, so their admission did not prejudice Mother. (*Rodrigues*, *supra*, 8 Cal.4th at p. 1117.) Accordingly, either the notes were admissible for a nonhearsay purpose, or any assumed error was harmless.

4. *Due Process*

"In a civil proceeding, the right to confront and cross-examine witnesses derives from the due process clauses of the state and federal constitutions." (*San Diego Police*

16

*Depart. v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 574 (*Geoffrey S.*); see also *In re Lucero L.* (2000) 22 Cal.4th 1227, 1244 ["parties generally have a due process right to cross-examine available hearsay declarants"].) Mother argues that the admission of the screenshots violated her right to due process, because she was denied the right to cross-examine Kimberly. Mother asserts that paternal aunt's testimony "involved multiple layers of hearsay," and Kimberly was "the source of the information." The argument fails.

Mother does not identify the specific testimony that conveyed a hearsay statement by Kimberly or any other specific testimony that purportedly involved multiple layers of hearsay. We have no duty to comb the record for testimony that might fit the description and develop the argument for her. (*Young v. Fish & Game Com.* (2018) 24 Cal.App.5th 1178, 1190; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Assuming for the sake of argument that the court admitted hearsay statements by Kimberly, no one denied Mother the right to cross-examine Kimberly. The record contains no indication that Mother tried to subpoena Kimberly or otherwise call her as a witness but was prevented from doing so. There thus was no due process violation. (*Geoffrey S.*, *supra*, 86 Cal.App.5th at p. 575 [rejecting a due process claim because the appellant never tried to call the hearsay declarants as witnesses].)

In sum, we conclude that all of Mother's evidentiary challenges are meritless.

B. *Substantial Evidence Supporting the Firearms Finding*

Mother argues that the juvenile court's firearms finding is not supported by substantial evidence. We disagree.

After a dependency petition has been filed, the juvenile court has exclusive jurisdiction to issue restraining orders protecting the children who are the subject of the petition. (Welf. & Inst. Code, § 213.5, subd. (a); Cal. Rules of Court, rules 5.620(b), 5.630(a).) The court may also issue a restraining order protecting the children's parent. (Welf. & Inst. Code, § 213.5, subd. (a); *In re Cassandra B.* (2004) 125 Cal.App.4th 199, 211.) Restraining orders issued by the juvenile court prohibit the restrained party from owning, possessing, purchasing, or receiving a firearm or ammunition during the term of the order. (Welf. & Inst. Code, § 213.5, subd. (g); Fam. Code, § 6389, subds. (a), (c)(1); Cal. Rules of Court, rule 5.630(g).) When the court issues the restraining order, it must determine "whether the restrained person is in possession or control of a firearm or ammunition, as provided in Section 6322.5 of the Family Code." (Welf. & Inst. Code, § 213.5, subd. (g).)

Under Family Code section 6322.5, when the court receives information that a restrained person has a firearm or ammunition, the court shall "determine, by a preponderance of the evidence, whether the person subject to a protective order has a firearm or ammunition in, or subject to, their immediate possession or control." (Fam. Code, § 6322.5, subd. (a).) The court may set a review hearing to make the determination. (*Id.*, subd. (c)(1).) If the court determines that the restrained party has firearms in violation of the restraining order, then the court must report the violation to the prosecuting attorney for the jurisdiction. (Fam. Code, § 6389, subd. (c)(4).)

We review the juvenile court's factual findings for substantial evidence. (*In re Carlos H.* (2016) 5 Cal.App.5th 861, 866.) We view the evidence in the light most

18

favorable to the prevailing party "and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination." (*In re Cassandra B.*, *supra*, 125 Cal.App.4th at p. 210.) "We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Substantial evidence supports the court's determination that Mother had firearms in or subject to her immediate possession or control. The evidence showed that the A. Cleaning Services Instagram account belonged to Mother, she posted a photo of firearms in her car in December 2020, and she referred to the firearms as "My toys." John claimed that he was merely using Mother's car to move his firearms and took the photo when Mother was not present, but the court found that John lacked credibility. The court reasonably concluded that Mother had taken the photo herself. And on the basis of all of that evidence, the court reasonably inferred that Mother had the firearms in her immediate possession or control in December 2020. Moreover, the court reasonably inferred that Mother still had them in her immediate possession or control at the time of the hearing. John refused to specify who had the firearms currently or where they were located. Mother had earlier testified that she did not have any firearms, but the court was not required to credit Mother's testimony. In the absence of any evidence that Mother had sold or in some other way relinquished possession or control of the firearms since December 2020, the evidence was sufficient for the court to find that Mother still had the firearms in or subject to her immediate possession or control.

Apart from her substantial evidence challenge, Mother argues that the juvenile court applied an incorrect legal standard, namely, whether Mother had "past possession

or future access" to firearms.  She relies in large part on arguments of counsel and comments by the court regarding Mother's "access" to firearms.  But the court "'is presumed to have been aware of and followed the applicable law.'"  (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)  Nothing in the record rebuts that presumption.  On the contrary, the court's ruling demonstrated that it applied the correct standard:  It found that Mother was "in possession of a number of firearms" on the basis of her Instagram post and that there was no credible evidence she was "no longer in possession" of them.  The record thus shows that the court was aware that it had to find Mother currently possessed firearms.

For all of these reasons, substantial evidence supports the court's firearms finding.

DISPOSITION

The amended restraining order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.
RAPHAEL
J.