Filed 10/30/14  P. v. Ayala CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JERRY AYALA,<br><br>    Defendant and Appellant. | G048892<br><br>(Super. Ct. No. 10CF1592)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

The trial court sentenced defendant Jerry Ayala to 9 years in prison after a jury found him guilty of sodomy and oral copulation of a person under 16 years of age, plus exhibiting pornography to a minor. Defendant also admitted three prior prison term allegations. The sole issue on appeal, is whether the court committed reversible error by allowing the victim to testify he feared defendant because he believed defendant belonged to a gang. Given the relevance of this testimony to the victim's credibility and the court's admonitions limiting the jury's use of the evidence, we conclude no error occurred and affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

Andres lived a short distance from defendant's residence. On four occasions in late 2008 and early 2009, when Andres was 15 years old and defendant 42 years of age, Andres visited defendant's home where the two engaged in the acts of sodomy and oral copulation. During the sexual activity, defendant played videotapes of men and women having sex.

Andres provided a general description of the interior of defendant's home and a detailed account of the two bedrooms defendant occupied where the sexual encounters occurred. Blankets were hung over the windows and doors. Defendant also kept a roll of toilet paper in the room to clean up after the sexual activity. In the second bedroom defendant occupied, Andres noticed defendant could watch the front of the residence because his television was connected to a security camera mounted on the roof. Andres testified one of the adult videos defendant played was entitled either "Latinas 100 percent" or "100 percent Latinas." In addition to smoking marijuana, Andres claimed defendant produced a glass pipe the two used to smoke methamphetamine.

On direct examination, Andres testified he was afraid of defendant. After the fourth encounter, defendant attempted to block Andres when he started to leave.

2

Andres ran out of the house and never returned.  He claimed he did not feel safe passing by defendant's house, because defendant or defendant's brother followed him and cursed at him.  He found a knife that he began carrying with him to school.  Andres was eventually caught with the knife on campus and expelled from school.

In addition to his problems in high school, Andres admitted he had been expelled from elementary school for having a BB gun and acknowledged making a prank 911 telephone call.  On each of these occasions, he tried to avoid punishment by lying about what happened.

In mid-2010, Andres was in juvenile hall after testing positive for marijuana.  During a medical examination, it was discovered he had contracted a sexually transmitted disease.  Andres then acknowledged his sexual contacts with defendant.

Andres spoke with two police officers.  Based on his statements, the officers drew diagrams of the bedrooms where the sexual acts took place.  The police arrested defendant and he gave them permission to search the residence.  During the search, officers found a drawer containing adult videos, one of which was titled, "Latinos 100%," and a roll of toilet paper on top of the dresser.  Behind a speaker, the police found a glass pipe and baggies containing what appeared to be methamphetamine.  The officers also noticed a surveillance camera mounted on the home's roof.

The police advised defendant of his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694]) and he agreed to answer questions.  Defendant denied both knowing Andres and having sex with a minor.

DISCUSSION

*1. Background*

The prosecution made a pretrial motion to introduce evidence Andres feared defendant because he believed defendant belonged to a street gang named Middle

3

Side. The trial court ultimately agreed to admit this evidence, citing the probative value of explaining Andres' compliance with defendant's sexual requests, the delay in reporting the crimes, and any potential inconsistencies in Andres' story. In addition, the court declared it would give the jury a limiting instruction to "diminish the prejudice" of this evidence and allow the defense to present evidence "there is no documented connection between the defendant and Middle Side."

Before the jury, Andres expressed his fear of testifying in this case. He stated Middle Side claimed the neighborhood where he had lived and, over a defense objection, said he believed defendant's house was associated with the gang. At this point, the trial court explained to the jury "[t]here are no gang charges in this case," and it was "not to use this evidence in any way to suggest that the defendant is connected with any kind of a gang. [¶] The purpose of this evidence is only to establish what this witness . . . was thinking so that you can better assess his believability." When Andres asserted defendant claimed to be a gang member and that he believed defendant belonged to the gang, the defense again unsuccessfully objected. But the trial court repeated its admonition the evidence could be "used only to show what the witness was thinking so that [the jury could] better assess [Andres'] believability."

In closing argument, the defense objected to the prosecutor's mention of the gang evidence. The trial court overruled the objection, noting it "has instructed the jury as to how to use" this evidence and repeated its belief "the only testimony was that Andres thought" defendant was a gang member.

After argument the trial court instructed the jury, giving it the following advisement on the gang evidence: "'During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other. [¶] 'In this instruction I am referring to Andres' testimony that Andres thought the defendant and others in the defendant's house were connected with a street gang. This evidence was admitted for the limited purpose of helping you evaluate Andres'

4

believability as a witness. You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant or anyone else in his house is connected with a street gang or that the defendant is a person of bad character or has a disposition to commit crime.'"

*2. Analysis*

Noting "evidence of gang membership or affiliation is inherently and extremely inflammatory" defendant argues the trial court erred by allowing Andres' testimony about his gang membership because it "had nothing to do with any issue in this case." This argument lacks merit.

The Supreme Court has indeed recognized that "because gang evidence may have a highly inflammatory impact on the jury, trial courts should carefully scrutinize such evidence before admitting it." (*People v. Montes* (2014) 58 Cal.4th 809, 859.) But "[w]hile gang membership evidence does create a risk the jury will impermissibly infer a defendant has a criminal disposition and is therefore guilty of the offense charged [citation], 'nothing bars evidence of gang affiliation that is directly relevant to a material issue.'" (*Ibid*.) "We review a trial court's rulings on the admission and exclusion of evidence for abuse of discretion. [Citation.]" (*People v. Chism* (2014) 58 Cal.4th 1266, 1291.) "Specifically, we will not disturb the trial court's ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.)

Contrary to defendant's assertion, this is not a case where the trial court admitted gang evidence. There was no expert testimony on the existence and nature of criminal street gangs generally or about the Middle Side gang in particular. Further, during the pretrial hearing the prosecutor acknowledged defendant was not a documented

5

gang member. And before the jury the prosecutor agreed "there are no gang charges in this case."

What the trial court allowed the prosecution to introduce was Andres's *belief* that defendant belonged to Middle Side. The purpose of this testimony was to explain why Andres feared defendant, why he repeatedly returned to defendant's bedroom, why he delayed reporting the sexual encounters, and why Andres was afraid to testify at trial.

The primary focus of this case concerned Andres' credibility. The factors a trier of fact "may consider in determining the credibility of a witness" include "[h]is demeanor while testifying and the manner in which he testifies," "[t]he existence or nonexistence of a bias, interest, or other motive," and "[h]is attitude toward the action in which he testifies or toward the giving of testimony." (Evid. Code, § 780, subds. (a), (f) & (j); see *People v. Merriman* (2014) 60 Cal.4th 1, 84; *People v. Mendoza* (2011) 52 Cal.4th 1056, 1084.) Thus, it is now settled, "'Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible.' [Citations.] Evidence of any explanation of the basis for such fear is likewise relevant to the jury's assessment of the witness's credibility and admissible for that nonhearsay purpose, but not for the truth of any matters asserted. [Citation.]" (*People v. Chism, supra,* 58 Cal.4th at pp. 1291-1292; see *People v. Burgener* (2003) 29 Cal.4th 833, 869; Evid. Code, § 780.)

Defendant argues gang evidence is only admissible where the case includes a gang charge or enhancement, or if fear is an element of one of the charged offenses. He cites no authority for this proposition and it is contrary to the previously cited authorities. In *People v. Sanchez* (1997) 58 Cal.App.4th 1435, the court rejected a claim the defendant had failed to receive the effective assistance of counsel because his trial attorney failed to object to the admission of gang evidence. The *Sanchez* court acknowledged "there was no evidence that the motive for the murder was in any way

6

gang related," and that the defendant's gang membership "had only limited probative value to corroborate the witnesses' identification of him" as the perpetrator. (*Id.* at p. 1449.) Nonetheless, the court concluded "the gang evidence had significant probative value on the issue of the[] witnesses' credibility to assist the jury in determining when they were in fact telling the truth" (*id.* at p. 1450), and therefore "the evidence was properly admissible on the issue of witness credibility" (*id.* at p. 1449). As a consequence, defendant's reliance on the fact that this case does not include gang charges or allegations and fear was not an element of any the crimes for which he was prosecuted is unavailing.

Nor can defendant complain Andres was allowed to testify to the basis for his fear during direct examination. "The[] authorities make clear that a trial court has discretion, within the limits of Evidence Code section 352, to permit the prosecution to introduce evidence supporting a witness's credibility on direct examination, particularly when the prosecution reasonably anticipates a defense attack on the credibility of that witness." (*People v. Mendoza, supra,* 52 Cal.4th at p. 1085; *People v. Merriman, supra,* 60 Cal.4th at p. 86 ["The prosecutor reasonably could anticipate . . . that the defense would vigorously challenge these witnesses' credibility" and "was entitled to present evidence of the witnesses' reluctance to testify to preemptively counter such an effort"].) The prosecutor sought to corroborate Andres in part through the testimony of the officers who arrested defendant and searched his residence. But, in addition, the prosecutor had Andres testify to his fear of testifying against defendant to explain what otherwise might be deemed inconsistent behavior in returning to defendant's home and then not reporting the incidents for over a year.

The cases on which defendant relies held the trial court erred in admitting gang evidence because it was either introduced on an undisputed fact or merely cumulative to other, less prejudicial proof of the same fact. But, as noted, Andres' credibility was the focus of the trial and his demeanor and attitude on the witness stand

7

and his explanation of how he behaved during the sexual encounters and afterwards was not merely cumulative to other evidence. Further, as noted, the court limited the gang testimony to Andres' belief that defendant was a gang member and that his house was a Middle Side gang hangout.

Finally, we note the trial court repeatedly informed the jury of the limited purpose for which it could consider Andres' testimony about his belief that defendant belonged to a gang. "Because the gang evidence was highly probative in this case, and the trial court gave a limiting instruction designed to lessen the risk of undue prejudice, we cannot say the trial court's decision to allow the gang affiliation evidence exceeded the bounds of reason." (*People v. Montes, supra,* 58 Cal.4th at pp. 859-860.)


DISPOSITION


The judgment is affirmed.



RYLAARSDAM, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.


8