Filed 8/22/16  P. v. Washington CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CLINZELL WASHINGTON,<br><br>    Defendant and Appellant. | B263078<br><br>(Los Angeles County<br>Super. Ct. No. BA426957)<br><br>**ORDER MODIFYING OPINION<br>(NO CHANGE IN JUDGMENT)** |

THE COURT:

IT IS ORDERED that the opinion filed herein on August 15, 2016, be modified as follows:

1. On page 7, the second full paragraph, which starts with the statement "Washington does not dispute this testimony was sufficient to authenticate the portion of the video," shall be deleted and replaced with the following paragraph:

"It is . . . settled that the testimony of a person who was present at the time a film was made that it accurately depicts what it purports to show is a legally sufficient foundation for its admission into evidence." (*People v. Bowley* (1963) 59 Cal.2d 855, 859.)  Under this well-established evidentiary rule, the

testimony of officers Hayashi and Anzora was sufficient to authenticate the portion of the video depicting what occurred after they arrived on scene.

2. The paragraph that begins on page 7 and continues on page 8, which starts with the statement "In *People v. Williams* (January 12, 2016, B261844) [unpub. opn.], Washington's co-defendant raised this same argument," shall be deleted and replaced with the following paragraph:

Although Washington acknowledges the officers' testimony, he argues that such evidence was insufficient to support a finding that the remainder of the video, which purportedly showed the events that occurred before the officers arrived, was accurate. In *People v. Williams* (January 12, 2016, B261844) [unpub. opn.], Washington's co-defendant raised an essentially identical argument, contending that even if the officers' testimony was sufficient to authenticate the portion of the video in which they appeared, the prosecution had provided insufficient evidence to authenticate the remainder of the video.

The foregoing does not affect a change in the judgment. Appellant's petition for rehearing is denied.

_____
ZELON, Acting P. J.,                    SEGAL, J.,                    GARNETT, J. (Assigned)

2

Filed 8/15/16  P. v. Washington CA2/7 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>CLINZELL WASHINGTON,<br><br>        Defendant and Appellant. | B263078<br><br>(Los Angeles County<br>Super. Ct. No. BA426957) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William N. Sterling, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Lance E. Winters, Senior Assistant Attorney General; Steven D. Matthews, Supervising Deputy Attorney General; and Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.

_____

Appellant Clinzell Washington and Charles Williams were charged with the attempted burglary of a marijuana dispensary. During their joint trial, the prosecution sought to admit a surveillance video that showed defendants standing near a roll-up security door that covered the entrance to the dispensary. Williams was holding a drill saw; Washington was holding a backpack and crowbar. Defendants objected to the video, asserting the prosecution had failed to authenticate the evidence. The court overruled the objection and both defendants were found guilty.

On appeal, Washington argues the court abused its discretion in admitting the surveillance video. In a prior appeal, Washington's co-defendant raised this same argument, which we rejected. (See *People v. Williams* (January 12, 2016, B261844) [unpub. opn.].) Consistent with our holding in *Williams*, we conclude the court did not err in admitting the video, and affirm the judgment.

**FACTUAL BACKGROUND**

### A.    *Summary of Events Preceding the Filing of the Information*

On July 8, 2014, at approximately 4:30 a.m., Los Angeles Police Department (LAPD) officer Jose Anzora and his partner responded to a report of a possible burglary in progress at the "Main Spot Collective" (the Main Spot), a medical marijuana dispensary located in Los Angeles. When Anzora arrived at the dispensary, he saw defendant Clinzell Washington and Charles Williams standing next to each other in front of the store. Washington was wearing a blue jumpsuit, black gloves and a dark colored hat; Williams was wearing a brown or burgundy tee shirt and a light colored hat. As Anzora and his partner approached, Williams and Washington began walking away from the dispensary, in opposite directions. The officers detained the suspects and placed them in handcuffs. Shortly thereafter, LAPD officers Daniel Hayashi and his partner arrived to aid in the investigation and transport the suspects to booking.

While inspecting the premises, officer Hayashi noticed that a lock on the bottom of the dispensary's roll-up security door had been cut. Hayashi conducted a search of a

2

white truck parked in front of the dispensary, where he found a drill saw, several grinder wheels, two crowbars and a backpack.

## B. *Information and Trial*

On August 6, 2014, the district attorney of the County of Los Angeles filed an information charging Washington and Williams with a single count of attempted burglary (Pen. Code, §§ 459 & 664[1]) and a single count of possession of burglary tools (§ 466.)[2]

Prior to the defendants' joint trial, the prosecution informed the court it intended to play the jury a 23-minute surveillance video that had recorded the area in front of the dispensary on the night in question. Washington's counsel objected, arguing the prosecution should not be permitted to show the video until it authenticated the evidence. In response, the prosecution stated that officers Anzora and Hayashi both appeared at the end of the video, and would "lay [a] foundation" by "identifying themselves [and defendants], who they detained on the scene." The court overruled the objection, explaining that it would allow the video based on the prosecution's "representation that the necessary witnesses will be here."

### 1. *Testimony of Jose Anzora*

During the testimony of officer Anzora, the prosecution informed the court it intended to show Anzora a two-minute segment of the surveillance video that depicted the events that occurred after he had arrived at the dispensary. Washington's counsel renewed his objection, arguing that the prosecution had still not authenticated the video. During a sidebar conference, the prosecution explained that Anzora would confirm the video accurately portrayed the events that had occurred while he was at the dispensary. The court permitted the segment of the video to be shown, explaining that Anzora's

---

[1]     Unless otherwise noted, all further statutory citations are to the Penal Code.

[2]     The information also alleged Washington had a prior "strike" offense under the "Three Strikes" law (§§ 667, subds.(b)-(i), 1170.12, subds. (a)-(d)), and further alleged he had two additional felony convictions that resulted in prison terms. (§ 667.5, subd. (b).)

testimony would be sufficient to provide a foundation, and that the "[t]he rest goes to weight."

The prosecution then played the surveillance video, beginning at time stamp 4:31 a.m. The video showed a white truck parked in front of the Main Spot. Anzora testified he had seen the same vehicle parked in the same spot when he arrived at the dispensary. Anzora also testified that the video's time stamp, which showed him arriving at the dispensary at approximately 4:32 a.m., accurately reflected his arrival time. He also testified that the video accurately portrayed his detention of Williams, and the subsequent arrival of officer Hayashi and Hayashi's partner.

### 2. Testimony of Daniel Hayashi

During the testimony of officer Hayashi, the prosecution informed the court it intended to play the entire surveillance video, which ran from approximately 4:10 a.m. to 4:33 a.m. The prosecution explained that Hayashi's testimony would provide a proper foundation for the evidence "based on the fact he appears on the video." The prosecution also explained that Hayashi had previously watched the video and would testify that the clothing Williams and Washington were seen wearing matched the clothing they were wearing when Hayashi had arrived on scene. The prosecution also informed the court that although the Main Spot employee who gave the video to the police no longer worked at the dispensary, it intended to call a current employee who was "familiar with the surveillance system and how it records." The court permitted the video to be shown based on the prosecution's "offer of proof."

Officer Hayashi testified that he had watched the entire video and did not notice any breaks or jumps in the recording. Hayashi confirmed the video accurately portrayed what had occurred during and after his arrival at the dispensary. Hayashi stated he was not the person who had retrieved the video from the dispensary, explaining that a detective had obtained the video during a "follow-up" investigation.

The prosecution played the video to the jury, which showed a white truck pull up to the Main Spot. Two individuals exited the vehicle. One of the individuals crouched

4

toward the bottom of a security door that covered an entrance to the dispensary. While the individual was crouched downward, sparks began emanating upward toward the surveillance camera. Later in the video, the same individual was seen holding a drill saw. The second individual who had exited the white truck was shown standing in front of the dispensary wearing a backpack and holding a crowbar. Toward the end of the video, officers Anzora and his partners were seen arriving at the dispensary and detaining the suspects. Hayashi and his partner were shown arriving shortly after the detention.

Hayashi testified that when he and his partner arrived on scene, the white truck depicted in the video was parked in front of the dispensary. Hayashi also testified that based on his contact with Williams and Washington on the night in question, he believed they were the two suspects shown in the video. Hayashi explained that the clothes and hats Williams and Washington were wearing in the video matched the items they were wearing when Hayashi arrived on scene. Hayashi identified Williams as the individual crouched near the bottom of the security door. He testified that the drill Williams was seen holding later in the video was the same type of drill Hayashi had recovered from the white truck. Hayashi identified Washington as the second individual on the video, testifying that the backpack and crowbar Washington was seen holding matched other items Hayashi had recovered from the vehicle.

### 3. Testimony of Levon Azhanvuryan

The prosecution also called Levon Azhanvuryan, the manager of the Main Spot. Azhanvuryan testified that the roll-up security door covering the front entrance of the dispensary remained permanently locked because the dispensary's customers entered the store through the rear of the building. Azhanvuryan also explained that the security door had two sets of locks, only one of which was accessible from the exterior of the store. Azhanvuryan stated that when he last checked the front of the store, which had occurred sometime in June, the exterior lock to the security door was not cut.

Azhanvuryan also testified that the Main Spot had a security camera which provided a live recording of the area located in front of the security door. Azhanvuryan

5

explained that the camera's images were recorded onto a digital video recording device (DVR) located inside the store, which was accessible to the Main Spot's employees.

### 4. *Renewed objections to the surveillance video and jury verdict*

After the prosecution had presented its evidence, Washington's counsel reasserted his objection to the surveillance video based on "lack[ of] foundation." The court overruled the objections, explaining that it had watched the video and did not see any "kind of break in the action where it would have been spliced or anything would have been left out. It appeared to be . . . continuous."

The jury found both defendants guilty of attempted burglary (count one) and possession of burglary tools (count two). At sentencing, Washington admitted a prior strike conviction and two additional prior felony convictions that had resulted in prison terms. The court sentenced Washington to three years in prison on count one, and sentenced him to a concurrent sentence of six months in prison on count two.[3]

## DISCUSSION

Washington argues the trial court should have excluded the surveillance video because the prosecution failed to authenticate the evidence. We review the court's determination of authenticity for abuse of discretion. (See *People v. Goldsmith* (2014) 59 Cal.4th 258, 266 (*Goldsmith*) [trial court's determination that the prosecution "provide[d] the foundational testimony necessary to authenticate [evidence]" is reviewed for abuse of discretion].) Under this standard, "we will not disturb the trial court's ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*Ibid.*)

"To be admissible in evidence, an audio or video recording must be authenticated. [Citations.]" (*People v. Mayfield* (1997) 14 Cal.4th 668, 747, disapproved on another

---

[3] On count one, the trial court sentenced Washington to the mid-term of one year in prison, which was doubled to two years as the result of his prior strike conviction. The court also added one year to the sentence for a prior prison term felony. (See § 667.5, subd. (b).) The court struck Washington's additional prior conviction.

6

ground in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.)  The prosecution must provide evidence that would permit a reasonable trier of fact to find the "video . . . is a fair and accurate representation of the scene depicted.  [Citation.]" (*Goldsmith, supra*, 59 Cal.4th at p. 266.)  "This foundation may, but need not be, supplied by the person taking the photograph or by a person who witnessed the event being recorded.  [Citations.]  It may [also] be supplied by other witness testimony, circumstantial evidence, content and location."  (*Ibid.*; see also *People v. Marshall* (1996) 13 Cal.4th 799, 832; *People v. Valdez* (2011) 201 Cal.App.4th 1429, 1432; § 1400.)

At trial, officers Anzora and Hayashi both testified that the video accurately portrayed what occurred during and after their arrival at the dispensary.  Officer Hayashi also testified that the clothing Williams and Washington were wearing throughout the video matched the clothing they were wearing when he arrived at the scene.  He further testified that the tools Williams and Washington were seen holding in the video matched items that Hayashi had found in the front seat of a white truck parked in front of the dispensary.

Washington does not dispute this testimony was sufficient to authenticate the portion of the video depicting what occurred after officers Anzora and Hayashi arrived on scene.  (*People v. Bowley* (1963) 59 Cal.2d 855, 859 ["It is well settled that the testimony of a person who was present at the time a film was made that it accurately depicts what it purports to show is a legally sufficient foundation for its admission into evidence"].)  Washington argues, however, that the evidence was insufficient to support a finding that the remainder of the video, which purportedly showed the events that occurred before the officers arrived, was accurate.

In *People v. Williams* (January 12, 2016,  B261844) [unpub. opn.], Washington's co-defendant raised this same argument, contending that the trial court erred in admitting the surveillance video because the prosecution had failed to "authenticate that the video . . . was an accurate representation of the events that it purported to show."  Like Washington here, Williams asserted that although the testimony of officers Anzora and Hayashi was sufficient to authenticate the portion of the video in which they

7

appeared, the prosecution had provided insufficient evidence to authenticate the remainder of the video.

We rejected the argument, concluding that in *People v. Chism* (2014) 58 Cal.4th 1266 (*Chism*), our Supreme Court held that analogous officer testimony was sufficient to authenticate a surveillance video depicting events that had occurred inside of a liquor store shortly before the arrival of responding officers. The responding officer in *Chism*, Stacey Holdredge, testified that she responded to a report of a possible burglary in progress at the liquor store. When Holdredge arrived, she found a victim lying on the floor with a gunshot wound. Police retrieved a surveillance video that showed the defendant walking into the store shortly before Holdredge had arrived. At trial, the prosecution introduced still photographs of the defendant that were produced from the images on the surveillance video. To authenticate the evidence, "[O]fficer Holdredge testified that she arrived at [the liquor store] within minutes after the shooting, that she viewed the surveillance videotape police obtained at the crime scene, and that it accurately portrayed what occurred when she [and other officers] were inside the store." (*Id.* at p. 1302.) A second officer provided testimony regarding the process that had been used to print the still photographs from the surveillance video. On appeal, the defendant argued the prosecution had failed to authenticate the photographs.

The Court ruled the officers' testimony was sufficient to authenticate the evidence: "Holdredge testified [the video] . . . accurately depicted her conduct and that of [other officers] inside the store immediately after the shooting. Thus, the videotape was shown to be an accurate representation of what it purported to be, a recording of the events that occurred inside [the liquor store] at or near the time of the shooting." (*Chism, supra*, 58 Cal.4th at p. 1304.) The Court further explained that the second officer's testimony established the still photographs depicted "the images stored in the videotape that Officer Holdredge authenticated." (*Ibid.*)

As we explained in our prior decision affirming the conviction of Washington's co-defendant, this case cannot be meaningfully distinguished from *Chism*. Officers Anzora and Hayashi each testified that the Main Spot's surveillance video accurately

8

portrayed what had occurred after they arrived at the dispensary, thereby raising a reasonable inference that the video accurately represented what had occurred during the period preceding their arrival. The prosecution also provided additional authenticating evidence that was unavailable in *Chism*, which included Hayashi's testimony that the clothes Williams and Washington were wearing when the officers arrived at the dispensary matched the clothing they were wearing in the video. Hayashi further testified that the tools the suspects were seen holding in the video matched items that Hayashi found during a search of a vehicle parked in front of the dispensary. In light of such testimony, the trial court did not abuse its discretion in concluding that the prosecution made a sufficient evidentiary showing that the video was "a fair and accurate representation of the scene depicted. [Citation.]" (*Goldsmith, supra*, 59 Cal.4th at p. 266.)[4]

## DISPOSITION

The judgment is affirmed.


ZELON, Acting P. J.

We concur:


SEGAL, J.                                    GARNETT, J.[*]

---

[4]    Washington also argues the trial court's decision to admit the surveillance video violated his "right to due process under the Fourteenth Amendment to the federal constitution because it caused the jury to be exposed to evidence from which no reasonable inference could be drawn [Citations.] The video evidence did not support any reasonable inference because, lacking authentication, it did not have any value at all and required the jury to speculate about what actually occurred." For the reasons set forth above, however, we conclude the prosecution's evidence was sufficient to authenticate the video, and raised a reasonable inference that the video accurately depicted what occurred outside the dispensary prior to the officers' arrival.

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.