Filed 10/22/20  P. v. Reynoso CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANGELICA REYNOSO,<br><br>    Defendant and Appellant. | 2d Crim. No. B300803<br>(Super. Ct. No. BA467183)<br>(Los Angeles County) |

Angelica Reynoso appeals an order of probation granted following her conviction of workers' compensation insurance fraud and insurance fraud.  (Ins. Code, § 1871.4, subd. (a)(1); Pen Code, § 550, subd. (a)(1).)  We conclude that the trial court did not abuse its discretion by ruling that the prosecutor established a prima facie case that a recorded interview with Reynoso was authentic, and affirm.

This appeal concerns Reynoso's fraudulent claim for reimbursement for residential flooring as part of her workers' compensation insurance claim.  Prior to trial, a prosecution investigator interviewed Reynoso in a recorded interview;

however, the investigator died before trial.  Over Reynoso's objections, the trial court decided that the prosecutor presented sufficient evidence of the recording's authenticity, and it permitted the jury to listen to the recording.  Reynoso appeals that ruling and argues that the prosecutor did not establish that the recording was not manipulated or altered.

*FACTUAL AND PROCEDURAL HISTORY*

Reynoso was employed as a service officer by the Gardena Police Department and worked at the city jail.  On February 18, 2016, Service Officer Brian Lee worked at the jail and booked an inmate who later reported that he had infectious scabies.  A hospital visit confirmed the inmate's infection.  Reynoso was not working at the jail on February 18, 2016, but did work the following day.

On February 20, 2016, the inmate was transferred to another jail.  Lee packaged the inmate's property but Reynoso may have touched the inmate's shoes.

That same day, Reynoso or her former husband purchased flooring from Lumber Liquidators.  The receipt for the purchase states that the purchase was for 1,049 square feet of flooring for $2,500.  Over the next few months, Reynoso purchased additional flooring from Lumber Liquidators.

On February 23, 2016, Reynoso reported to her employer that she had a rash and believed it to be scabies due to the inmate exposure.  Reynoso received treatment that day from a medical clinic.

On March 9, 2016, Reynoso informed her employer that she believed that scabies had infected her children and her residence.  The employer sent a professional cleaning crew to Reynoso's residence.  The cleaners found an infestation of bedbugs, but not

1

scabies. The crew steam-cleaned the carpet, but did not advise Reynoso to replace the carpet with new flooring.

Gina Ayers, an administrative analyst for the Gardena Police Department, received a written workers' compensation claim regarding Reynoso's scabies exposure. The claim form stated that the date of Reynoso's exposure was February 19, 2016. Reynoso later brought flooring receipts to Ayers and inquired whether workers' compensation would reimburse her. Ayers transmitted the claim to Sonia Retamosa, an adjustor for the third-party workers' compensation administrator for Gardena. Ayers also referred Reynoso to Retamosa regarding the flooring expenses.

Approximately one year following Reynoso's report of exposure to scabies, she contacted Retamosa regarding reimbursement for replacement flooring. Reynoso stated that her physician advised her to replace her flooring. Reynoso sent flooring invoices to Retamosa dated from February to May 2016, amounting to $8,640.22.

Retamosa advised Reynoso to either submit a physician's note regarding the flooring expense or sign a release for her medical records. Reynoso replied that the replacement recommendation came from the cleaning crew who cleaned her residence. Retamosa recommended that the flooring expense claim be denied because of lack of evidence of a medical necessity. In fact, the claim was denied and Reynoso received no reimbursement for the flooring.

*Recorded Interview with Investigator Michael Downs*
*(Downs recording)*

On January 30, 2018, Downs conducted a recorded interview with Reynoso at the police department. Reynoso stated

2

that the cleaning crew recommended that she replace the carpet in her residence to remove a bedbug infestation. Acknowledging that she had limited contact with the infected inmate before February 20, 2016, Reynoso explained that she mistakenly included the February 20, 2016, flooring receipt in her workers' compensation claim. Reynoso also stated that the bedbug infestation stemmed from her contact with homeless inmates at the jail. She added that Sergeant Rodney Gonzales had informed her that the police department would reimburse her for the flooring expenses.

At trial, the parties stipulated that the voices heard on the recording were those of Downs and Reynoso. Henry Valdez, a prosecution investigator, testified that office protocol required the downloading of a recorded interview and production of a CD, which is then logged at the prosecutor's office.

The jury convicted Reynoso of workers' compensation insurance fraud and insurance fraud. (Ins. Code, § 1871.4, subd. (a)(1); Pen. Code, § 550, subd. (a)(1).) The trial court suspended imposition of sentence and placed Reynoso on formal probation for three years, with terms and conditions. The court also imposed fines and fees and informed Reynoso that if she completed 300 hours of community service during the first year of felony probation, she could seek reduction of the felony offenses to misdemeanor offenses.

Reynoso appeals and contends that the recorded interview was not sufficiently authenticated.

3

*DISCUSSION*[1]

Reynoso argues that only the investigator's testimony can establish that the recording is accurate, complete, and without alteration. She correctly asserts that the proponent of a recording bears the burden of establishing authenticity. Reynoso contends that admission of the recording into evidence is prejudicial pursuant to any standard of review. She points out that the prosecutor discussed the recording extensively during summation.

At trial, Reynoso asserted that only Downs, now deceased, could authenticate the recording. Otherwise, Reynoso argued that the recording could have been manipulated or altered prior to being logged at the prosecutor's office: The defense does not know "if erasures, deletions, were made, insertions were made" or "if it has been altered." The prosecutor responded that Downs announced the start and finish times of the recording, amounting to 44 minutes, and the play length would confirm that time. Reynoso agreed that the transcripts offered by each party did not contain material differences. She also did not suggest any specific alterations in the recording.

Recordings are writings as defined by section 250. To be admissible, a writing must be relevant and authenticated. (§§ 350, 1401; *People v. Goldsmith* (2014) 59 Cal.4th 258, 266 [statement of general rule].) The trial court determines the issue of authentication as a preliminary fact. (§ 403, subd. (a)(3); *Goldsmith*, at p. 266.) Section 1400 defines authentication as "the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is."

---

[1] All statutory references hereafter are to the Evidence Code.

4

"Essentially, what is necessary is a prima facie case. 'As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.' " (*Goldsmith*, at p. 267.) Authentication may be supplied by witness testimony or circumstantial evidence, among other methods. (*Id.* at p. 268.) The trial court possesses the discretion to determine authenticity of a recording and permit its admission into evidence. (*Id.* at p. 266; *People v. Gonzalez* (2006) 38 Cal.4th 932, 953.)

The trial court acted within its discretion by deciding that the prosecutor established a prima facie showing of authenticity for the Downs recording. The parties stipulated that the voices on the regarding were Downs and Reynoso. The parties also agreed that their respective transcripts of the recording had no material differences. At the beginning and end of the recording, Downs announced the time. From this information, the court could measure the duration of the interview and decide that it was complete. Downs also stated the date and location of the interview at the inception of the recording. Valdez testified regarding the procedure for creating a CD from the recording and then logging it at the prosecutor's office.

Finally, Reynoso did not point to any specific alterations or deletions that may have been performed, a relevant but slight factor in assisting the trial court to determine prima facie authenticity. Indeed, during summation, defense counsel asserted that the jury should listen to the recording carefully because it sounded as though the recording was manipulated near page 13 of the transcript. (*People v. Goldsmith, supra*, 59

5

Cal.4th 258, 267 [trier of fact ultimately determines authenticity of document or recording].)

        *O'Laskey v. Sortino* (1990) 224 Cal.App.3d 241, overruled on other grounds by *Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 776, footnote 4, does not assist Reynoso.  That decision concerned the complete absence of evidence to establish the authenticity of a tape recording, including identification of the voices or evidence of the date and location of the recording.  (*Id.* at pp. 249-250.)

*DISPOSITION*

        The judgment (order of probation) is affirmed.

        <u>NOT TO BE PUBLISHED.</u>


                GILBERT, P. J.

We concur:



PERREN, J.



TANGEMAN, J.

Norman J. Shapiro, Judge

Superior Court County of Los Angeles

_____

Stone Busailah, Michael P. Stone, Muna Busailah and Robert Rabe for Defendant and Appellant

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.