Filed 3/13/25  P. v. Gipson CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CLAUDE DALE GIPSON III,<br><br>    Defendant and Appellant. | A168907<br><br>(Contra Costa County<br> Super. Ct. No. 02-22-00170) |

After a jury found Claude Dale Gipson III guilty of two felonies, domestic violence causing corporal injury (Pen. Code,[1] § 273.5, subd. (a)) and false imprisonment by violence (§§ 236, 237), the trial court sentenced Gipson to middle terms of three years and two years in prison, respectively, with the latter term stayed.  Gipson's appointed counsel filed a brief raising no arguable issues but seeking our independent review of the record under *Anders v. California* (1967) 386 U.S. 738 and *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  Counsel informed Gipson of his right to file a supplemental brief, which Gipson has not done.  Based on our independent review of the record, we find no error and therefore affirm.

---

[1] Further undesignated statutory references are to the Penal Code.

1

## BACKGROUND

In April 2022, Gipson and Jane Doe[2] were dating and living with Doe's mother. Doe had recently graduated from cosmetology school and wore her hair in green braids for the occasion.

On April 23, Doe attended a graduation party at a classmate's house in Richmond, California. Gipson was upset because he did not want Doe to attend the party while he worked. Early the next morning, Richmond Police Department officers were dispatched to the Richmond address in response to multiple 911 calls of an assault in progress.

Amado Garca first called 911 around 1:00 or 1:30 a.m. after being awoken by crying and someone yelling for help. Garca could see a person being punched and slapped outside his window. Garca went outside and saw a man hitting a woman. The woman was crying for help, and the man was angrily "requesting" to see the woman's cell phone. Garca observed the man drag the woman by the arm to a nearby field where he held the woman's head and began banging it against the ground. The man then started pulling the woman by her hair, which is when Garca called 911.

Another neighbor, Naomi Hurtado, also called 911, twice, to report "a domestic violence attack" in progress. Although it was dark, Hurtado reported hearing a man "beating on" a woman and saying, "I'm going to kill you."

Richmond police officers responded to the scene around 2:00 a.m. As officers approached, they could hear a male yelling and a female screaming and crying. Officers observed a female, later identified as Doe, face down in

---

[2] The trial court granted the People's request to refer to the victim as "Jane Doe." We refer to Doe in the same way to protect her privacy. (See Cal. Rules of Court, rule 8.90(b)(4).) Further rule references are to the California Rules of Court.

an open field with a male, later identified as Gipson, standing over her. Police ordered Gipson to the ground; Gipson complied and was handcuffed. Officers observed abrasions on Doe's arms consistent with falling or being dragged and located two braids in the field where Doe was found. The officers arrested Gipson, and Doe was transported to the hospital. At the hospital, Doe's face was observed to be swollen, and she had bruising and abrasions on her knee, elbows, and forearms; Doe's clothing was covered in grass, and she was missing braids.

On April 27, 2022, Gipson was charged with felony counts of domestic violence causing corporal injury (§ 273.5, subd. (a)), and false imprisonment by violence (§§ 236, 237). The amended information, filed August 14, 2023, further alleged probation ineligibility factors under section 1203, subdivision (e)(4) and aggravating circumstances pursuant to rule 4.421. Gipson pled not guilty.

On the first day of trial, the prosecution stated the then-open settlement offer on the record: 240 days in county jail, which could be satisfied through electronic home detention, in exchange for a felony guilty plea to the first count of domestic violence causing corporal injury. The offer, which had been previously extended at a December 2022 pretrial conference, would be revoked if the case proceeded to jury selection. Gipson did not accept the offer, and the case proceeded to trial. The parties stipulated before the jury that Gipson had been "convicted of felony injuring a person with a past or present dating relationship" pursuant to section 273.5 on September 10, 2002, in Solano County, California.

For the prosecution, Garca testified to observing Gipson hit and drag Doe into the field. Two of the responding officers testified about finding Doe on the ground in the fetal position with Gipson standing over her and

3

observing Doe's injuries at the hospital. Doe's mother also testified about Doe's relationship with Gipson and seeing her daughter before and after the incident. As further evidence of Doe's injuries, the People introduced several photographs of Doe in the hospital.

The People also called Doe to testify; Doe stated that she did not want to be there and appeared only in response to the court's order. Doe responded, "I don't remember" to virtually every question regarding the incident between her and Gipson, on both direct and cross-examination. The court found it "overwhelmingly clear" that Doe was "feigning memory loss" and admitted into evidence a body camera video of Doe's statements to police at the hospital, which was played for the jury.

Doe explained to police officers that she and Gipson were dating, and Gipson thought Doe was with her ex-boyfriend the night of the incident. Gipson had repeatedly called and texted Doe that night, but Doe ignored the calls and messages because she did not want to argue. When Doe finally answered, Gipson told her that he was outside and she needed to come out or he would "fuck everything up." Doe went outside, and Gipson headbutted her "maybe four times." Doe tried to walk away, but Gipson followed. Doe fell down attempting to avoid Gipson's punches, at which point Gipson hit Doe and began dragging her by the hair.

The prosecution also introduced a Ring camera video, which was admitted over defense objection, purportedly showing Gipson and Doe arguing before the incident. A responding officer testifying to the Ring video's accuracy identified several landmarks in the video that corresponded with images of the scene. The officer also testified that the clothing in the video matched the clothing Gipson and Doe were wearing the night of the incident.

4

On August 23, 2023, the court instructed the jury, and the parties gave closing arguments. The court denied Gipson's request for jury instructions on self-defense but, over the People's objection, gave a unanimity instruction (CALCRIM No. 3500).

On August 24, the jury found Gipson guilty of both counts as charged. Gipson waived the right to a jury trial on the probation ineligibility factors under section 1203, subdivision (e)(4), and the court found true that Gipson had suffered felony convictions rendering him ineligible for probation.

The court also determined the aggravating circumstances under rule 4.421(b) were for the court to decide and found true that Gipson's prior convictions were "numerous or of increasing seriousness" and that his prior performance on supervised release was "unsatisfactory" pursuant to rule 4.421(b)(2) and (b)(5). Gipson argued the records of conviction were insufficient to support the court's finding of poor performance but did not otherwise object to the trial court deciding the aggravating factors. At the September 15 sentencing, the court declined to find Gipson's childhood trauma or posttraumatic stress disorder contributed to Gipson's "actions on that day in any way" but considered the length of time without a conviction (17 years) a mitigating factor. The court likewise rejected the defense argument that Gipson was being penalized for declining the pretrial settlement offer. The court sentenced Gipson to the middle term of three years for the felony domestic violence conviction and a concurrent middle term of two years for the felony false imprisonment conviction, which was stayed pursuant to section 654.

Gipson timely appealed.

## DISCUSSION

As noted, Gipson's appointed counsel filed a brief identifying no basis for relief and asking us to review the record on appeal to determine if there are any arguable issues. (*Wende*, *supra*, 25 Cal.3d at pp. 441–443.) Having carefully reviewed the entire record, we conclude there are none. We briefly address the issues listed by counsel pursuant to *Anders v. California*, *supra*, 386 U.S. at page 744.

### I. Gipson's Right to a Jury Determination of Aggravating Factors

Under the Sixth Amendment, any fact that increases the penalty for a crime beyond the prescribed statutory maximum, except for the fact of a prior conviction, must be submitted to a jury and proven beyond a reasonable doubt. (*People v. Catarino* (2023) 14 Cal.5th 748, 749, 754.) Historically, the prior conviction exception enabled the court, rather than a jury, to use certified records of conviction to decide as aggravating factors whether the defendant suffered prior convictions that are numerous or increasingly serious and whether the defendant performed unsatisfactorily while on supervised release. (*People v. Scott* (2015) 61 Cal.4th 363, 405.) But, as the United States Supreme Court has emphasized, under this " 'narrow exception,' " a trial court may "do [no] more than identify [the defendant's] previous convictions and the legal elements required to sustain them." (*Erlinger v. United States* (2024) 602 U.S. 821, 838 (*Erlinger*).)

While the California Supreme Court is "poised to consider" the effect of *Erlinger* on the prior conviction exception in *People v. Wiley* (2023) 97 Cal.App.5th 676 (*Wiley*), review granted March 12, 2024, S283326, we identify no errors in these sentencing proceedings regardless of *Wiley*'s outcome. (*People v. Lynch* (2024) 16 Cal.5th 730, 775, fn. 20 (maj. opn.); see also *id.* at p. 810 (dis. opn. of Guerrero, C.J.).)

6

First, the trial court did not engage in improper factfinding outside the scope of rule 4.421(b)(2), because the court did nothing other than identify Gipson's prior convictions.  Moreover, the parties had stipulated before the jury to Gipson's prior 2002 felony conviction for domestic violence.  The court likewise relied on only the face of the conviction records in finding true the aggravating factor under rule 4.421(b)(5), observing that Gipson "was on a probation grant for the earliest conviction, the [violation of section] 10851, when he allegedly committed and was convicted of the domestic violence.  That's what caused the revocation."  Thus, the date and nature of the prior convictions demonstrate that Gipson's "prior performance on probation and parole was unsatisfactory, in that, he committed new offenses and was committed to prison in both instances."  Accordingly, the court's findings did not involve any improper factfinding or inference.

Second, unlike *Wiley*, *supra*, 97 Cal.App.5th at pages 687–688 (review granted Mar. 12, 2024, S283326) and *Erlinger*, *supra*, 602 U.S. at pages 825–827, the court did not use these aggravating circumstances to *enhance* Gipson's sentence.  Rather, the court considered these circumstances in aggravation as a basis for denying Gipson's request for the lower prison term pursuant to section 1170, subdivision (b)(6), which authorizes imposition of the lower term "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances."  Thus, Sixth Amendment concerns associated with factual findings that expose "a defendant to a greater potential sentence" are not implicated.  (*Cunningham v. California* (2007) 549 U.S. 270, 281.)

## II.  Admission of Doe's Statements to Police

Hearsay is evidence of an out-of-court statement introduced to prove the truth of the matter asserted and is inadmissible absent an exception.

7

(Evid. Code, § 1200, subds. (a), (b).)  An out-of-court statement made by a witness is not inadmissible under the hearsay rule if the statement is inconsistent with the witness's testimony in court and complies with Evidence Code section 770.  (Evid. Code, § 1235.)  Evidence Code section 770 requires the exclusion of an inconsistent statement unless the witness was given an opportunity to explain or deny the statement or the witness is subject to being recalled.  (Evid. Code, § 770.)

The fundamental requirement of this hearsay exception is that the statement be inconsistent with the witness's trial testimony.  (*People v. Cowan* (2010) 50 Cal.4th 401, 462.)  Inconsistency may be implied where the witness's claim of lack of memory amounts to "deliberate evasion."  (*People v. Johnson* (1992) 3 Cal.4th 1183, 1219.)  We review the trial court's rulings on hearsay for abuse of discretion.  (*People v. Grimes* (2016) 1 Cal.5th 698, 711.)

Here, the trial court did not abuse its discretion in admitting Doe's statements to police.  Doe was asked repeatedly about the details of her statements to police, affording her an opportunity to explain or deny them, and was subject to recall.  Doe testified she did not "recall" dating Gipson or going to a party on April 24.  She did not "remember" if Gipson repeatedly called or texted her that night and did not "remember" if Gipson headbutted her or had dragged her by her hair.  When the prosecution showed Doe pictures of herself, Doe said she did not know or did not "recall" who the person was.  Even on a cold record, Doe's evasiveness is so obvious it renders her out-of-court statements "inconsistent" with this trial testimony.

### III.  Admission of the Ring Camera Video

Authentication of a writing, including a video, is required before it may be introduced into evidence.  (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266, citing Evid. Code, §§ 250, 1401.)  "A photograph or video recording is typically

8

authenticated by showing it is a fair and accurate representation of the scene depicted." (*Goldsmith*, at p. 267; see also Evid. Code, § 1400.) "We review claims regarding a trial court's ruling on the admissibility of evidence for abuse of discretion." (*Goldsmith*, at p. 266.)

Again, we find no abuse of discretion in admitting the Ring video into evidence. Doe's mother testified that the video came from the host of the party and depicted Doe and Gipson. Doe's mother identified Doe in the video as wearing the same outfit she left the house in, which was the same outfit Doe was wearing at the hospital after the incident. The responding officer similarly testified to observing Doe and Gipson wearing the same outfits at the scene as are visible in the video. Further, the responding officer identified landmarks seen in the video to verify the location of the Ring camera filming the incident.

## DISPOSITION

Having independently reviewed the record under *Wende, supra*, 25 Cal.3d 436, we find no error. The judgment is affirmed.

_____
DESAUTELS, J.

We concur:


_____
STEWART, P. J.


_____
RICHMAN, J.

*People v. Gipson III* (A168907)