Filed 10/30/25  P. v. Zhao CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

|  |  |
|---|---|
| THE PEOPLE, | C100825 |
| Plaintiff and Respondent, | (Super. Ct. No. 62168265A) |
| v. | |
| SHU ZHAO, | |
| Defendant and Appellant. | |

A jury found defendant Shu Zhao guilty of one count of soliciting prostitution and hung on other counts that were later dismissed.  The trial court placed defendant on informal probation for one year with 90 days in county jail.

On appeal, defendant contends the trial court prejudicially erred in:  (1) sustaining an objection to defense counsel's closing argument that all non-Asian officers involved in the investigation harbored racial bias against defendant's culture; (2) sustaining objections to certain cross-examination questions about the prosecution expert witness's

1

racial bias; and (3) admitting a Google Maps printout because it lacked foundation and was a hearsay statement.[1]

We disagree:  (1) the inference that all non-Asian officers in this case harbored racial bias was speculative and factually unfounded, and defense counsel was permitted to criticize the expert's implicit racial bias at closing; (2) the trial court acted within its discretion to sustain objections to cross-examination questions of marginal impeachment value; and (3) the Google Maps printout was erroneously admitted due to lack of foundation, but its admission was harmless and, as such, we need not decide whether the printout was also hearsay.

The judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On January 10, 2019, an undercover officer, employed by the Placer County Probation Department and assigned to the Placer Special Investigations Unit, visited defendant's massage parlor for a massage appointment as part of an operation.  During the massage, defendant repeatedly touched the officer's testicles, buttocks, and thighs and negotiated prices with the officer while holding his penis.  The officer ended the massage after they agreed on a price.

On January 17, 2019, a different undercover officer from the Placer Special Investigations Unit and employed by the Placer County Sheriff's Office had similar experiences during a massage appointment with defendant and her coworker.

The People charged defendant with one count of pandering by inmate in a house of prostitution (Pen. Code, § 266i, subd. (a)(3)), one count of pandering by encouraging

---

[1] Defendant concedes she made no objection or motion below under the Racial Justice Act (Pen. Code, § 745) and states her arguments on appeal are made independent of the act.

(Pen. Code, § 266i, subd. (a)(2)), and two counts of soliciting prostitution on January 10 and January 17, 2019, respectively (Pen. Code, § 647, subd. (b)(1)).

One of the undercover officers saw that the windows of defendant's massage parlor were covered up. The People's expert on human trafficking, pimping, and pandering, who was a detective at the City of Roseville Police Department, testified that window covering was "more of a commonality . . . not necessarily a violation." He elaborated on commonality: "[S]pecifically with Asian massage parlors, it seems like their front windows are always covered with either some kind of fabric or logos. [¶] Again, balancing off of a higher class type place like Serenity Spa where you can see in, there is aroma stuff when you walk in, you can buy stuff while you're there. [¶] Asian massage parlors are usually just bare bones, covered up. I think it raises the eyebrows of a lot of people when you are in a strip mall and driving by a lot of places and then you see a massage place." The prosecutor asked expert whether he believed massage parlors with covered windows tend to be places of prostitution. Expert responded: "I think that would be a very hard correlation to draw. Again, it's more just an eyebrow raiser. It's kind of a clue, but it's nothing we actually act on. Just because your windows are covered doesn't mean there is prostitution occurring inside." He further clarified that when he said "a clue," he did not mean a clue to investigate further, but that it was "consistent with Asian massage parlors."

Expert also reviewed financial documents found at defendant's massage parlor and commented it was "unique" that the business was open on Christmas and the day after Christmas "given the holidays that are recognized." This answer sparked the following questioning:

[Defense counsel]: Well, do you ever go to a Chinese restaurant on Christmas Eve?

…

[Expert]: Not that I can think of.

3

[Defense counsel]:  Do you know any Jewish people?

…

[Expert]:  I suppose I do.  I don't really get into that specific area with people that I interact with.

[Defense counsel]:  Are you familiar with the running joke that Chinese restaurants are where Jews celebrate Christmas?

[Expert]:  I'm not.

[Defense counsel]:  Okay.  So I'm assuming that you celebrate Christmas?

[Prosecutor]:  Objection; relevance.

The Court:  Sustained.

[Defense counsel]:  Do you work on Christmas Eve?

[Prosecutor]:  Objection; relevance.

The Court:  Sustained.

[Defense counsel]:  Well, businesses of all kinds are open on Christmas Day, on Christmas Eve, isn't that true?

[Expert]:  There's places that are open.

[Defense counsel]:  And are you . . . aware that Buddhism is the predominant religion in the –

[Prosecutor]:  Objection.

[Defense counsel]:  -- country of China?

The Court: Sustained.

[Defense counsel]:  Is it your assumption that every person or business celebrates Christmas by shutting down their business?  Is that your understanding?

[Expert]:  Well, maybe not an understanding but a reasonableness in our society is those days usually normal businesses are closed.  Again . . . I just noticed the dates, the 25 and 26, and it seemed that that's kind of – I didn't realize people were getting massages on those days.

[Defense counsel]: Because you wouldn't get a massage on those days?

[Expert]: That wouldn't be my family plans, no.

[Defense counsel]: As part of your training and experience, are you given any kind of cultural awareness training?

[Prosecutor]: Your Honor, I'm going to object to this line of questioning. [¶] . . . [¶] It's not relevant.

The Court: Okay. Sustained.

…

(bench conference)

…

[Defense counsel]: [Expert], are you aware of any other kinds of businesses that can be open on Christmas?

…

[Expert]: I am.

[Defense counsel]: Can you name a few?

[Expert]: Sure. City of Roseville, the police department and the fire department.

[Defense counsel]: Well, I'm talking about businesses, not government agencies.

[Expert]: I'm aware of like maybe adjusted hours potentially.

[Defense counsel]: Meaning what?

[Expert]: What's coming to mind as I sit here is maybe Thunder Valley Casino may be open on Christmas Eve, Christmas Day, but they might have some adjusted hours.

[Defense counsel]: And that's all that you can think of in terms of businesses that might be open on Christmas?

[Expert]: It is now that I'm sitting here thinking of specific businesses.

Defense counsel addressed expert's testimony at closing: "You can hear the content come dripping off of him. Talk about Asian massage, yeah, they usually have logos in the window. They can't really look in. How about they're open on Christmas? Now, they got to be criminals if they're open on Christmas[,] right? I mean, there's just no respect for somebody else's culture or beliefs, and I think that that should be rejected." He continued: "I mean, this testimony, I don't think his testimony really meant anything other than it show[ed], frankly, all of these non-Asian officers have a contempt for this culture." The trial court sustained the prosecutor's objection to the argument that all non-Asian officers in the case have a contempt for the culture.

Defense counsel proceeded: "Well, ladies and gentlemen, I hope that you don't think that because a business is open on Christmas there's something suspicious about that. I hope you don't think that because it's the habit of Asian massage parlors to have logos in the window that that makes them guilty of anything other than, you know, setting up businesses as immigrants and maintaining proper business licenses, et cetera. You judge for yourself. [¶] In fact, one of the criteria for judging witnesses, was the witness's testimony influenced by a factor such as bias or prejudice."

The prosecutor argued at closing that all officers' testimonies corroborated each other, including expert's even though he "didn't know really anything about this case. He wasn't involved, he wasn't on that task force."

The jury found defendant guilty of one count of soliciting prostitution on January 10, 2019, and hung on the remaining counts. Pursuant to the parties' agreement, the trial court dismissed the remaining counts and placed defendant on one-year informal probation with 90 days in county jail.

Defendant timely appeals.

DISCUSSION

I

*Closing Argument*

Defendant contends the trial court abused its discretion and violated her statutory and Sixth Amendment rights in sustaining the prosecutor's objection to defense counsel's closing argument that all non-Asian officers in this case were biased against Chinese culture.  We disagree.

"A criminal defendant has a well-established constitutional right to have counsel present closing argument to the trier of fact."  (*People v. Marshall* (1996) 13 Cal.4th 799, 854, citing *Herring v. New York* (1975) 422 U.S. 853, 856-862.)  California law recognizes the same right.  (*People v. Manning* (1981) 120 Cal.App.3d 421, 423-424, citing Pen. Code, § 1093, subd. (e).)

"At closing argument a party is entitled both to discuss the evidence and to comment on reasonable inferences that may be drawn therefrom."  (*People v. Morales* (2001) 25 Cal.4th 34, 44.)  "While counsel is accorded 'great latitude at argument to urge whatever conclusions counsel believes can properly be drawn from the evidence [citation],' counsel may not assume or state facts not in evidence [citation] or mischaracterize the evidence."  (*People v. Valdez* (2004) 32 Cal.4th 73, 133.)  "A defendant's rights to due process and to present a defense do not include a right to present to the jury a speculative, factually unfounded inference."  (*People v. Mincey* (1992) 2 Cal.4th 408, 442.)  "Trial courts have broad discretion to control the duration and scope of closing arguments."  (*People v. Simon* (2016) 1 Cal.5th 98, 147.)

"We review a trial court's decision to limit defense counsel closing argument for abuse of discretion."  (*People v. Simon, supra*, 1 Cal.5th at p. 147.)  Under this standard, we do not disturb or reverse a trial court's ruling unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.  (*People v. Chhoun* (2021) 11 Cal.5th 1, 26.)

7

Here, the inference of the undercover officers' racial bias drawn by defense counsel was speculative and factually unfounded. Expert and the two undercover officers were employed by three different law enforcement agencies, and expert had never been assigned to the Placer Special Investigations Unit where the two undercover officers served. Nothing in the record suggests that expert had spoken to or knew the undercover officers, much less shared his alleged racial bias with them. The prosecutor also pointed out during closing argument that expert had no involvement in the investigation of this case. Defendant provides no record citation demonstrating that the undercover officers harbored racial bias but instead claims "if one member of the police team had racially biased attitudes, as [expert] clearly did, then it was likely that others did as well." But no evidence suggests expert was on the same "team" as the undercover officers.

Defendant's reliance on *U.S. v. Kellington* (9th Cir. 2000) 217 F.3d 1084 is misplaced. There, the court found a Sixth Amendment violation when the trial court prevented counsel from arguing the importance of an expert's testimony in closing even though the testimony "was obviously relevant to negate criminal intent." (*Id.* at p. 1099.) But as discussed above, expert's testimony here shed no light on the undercover officers' potential racial bias.

Moreover, the trial court allowed defense counsel to present to the jury his theory that expert was influenced by alleged racial bias. Defense counsel criticized expert for assuming Asian massage parlors engage in illegitimate business merely because they tend to cover their windows and stay open on Christmas. He urged the jury to reject expert's testimony because expert showed no respect for other cultures or beliefs and warned the jury not to assume defendant's massage parlor engaged in illegal businesses merely because it had covered windows and was open on Christmas. He further reminded the jury that it must consider whether a witness's testimony was influenced by bias in evaluating the witness's credibility. Thus, we find no abuse of discretion. (See *People v.*

*Simon, supra*, 1 Cal.5th at p. 149 [no abuse of discretion in limiting closing argument when defense counsel was not precluded from making his central argument].)

## II

### *Cross-Examination*

Defendant contends the trial court violated the Evidence Code and the confrontation clause in sustaining objections to defense counsel's cross-examination questions about expert's racial bias after expert commented it was "unique" that defendant's massage parlor was open on Christmas. We disagree.

"The confrontation clause guarantees the defendant in a criminal prosecution the right of cross-examination, which includes exploration of bias." (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 349.) "It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness['s] safety, or interrogation that is repetitive or only marginally relevant." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) A violation of the confrontation clause occurs when "[a] reasonable jury might have received a significantly different impression of [a witness]'s credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination." (*Id.* at p. 680.)

"Proper application of *Van Arsdall* requires threshold consideration of whether the trial court exercised sound discretion under state law evidentiary standards in limiting the scope of cross-examination." (*People v. Castaneda-Prado* (2023) 94 Cal.App.5th 1260, 1282.) *Van Arsdall*'s acknowledgement of the trial court's wide latitude to limit cross-examination "leaves room for an evaluation of admissibility under the Evidence Code, tested under the deferential abuse of discretion standard of review governing such

9

discretionary questions." (*Castaneda-Prado*, at p. 1282.) "If the trial court excluded 'evidence of marginal impeachment value' [citation] or otherwise merely carried out the routine evidentiary function of controlling the scope of permissible cross-examination, the answer to this initial evidence question will generally be yes — the trial court was within its discretion — and the inquiry comes to an end. There was no error, under either state law or under the Sixth Amendment." (*Ibid.*) But "[w]here a trial court effectively renders cross-examination an exercise in futility, we must proceed to a second stage of analysis. Here, we ask a further, purely constitutional question whether '[a] reasonable jury might have received a significantly different impression' of the challenged witness's credibility if the proposed line of cross-examination had been permitted." (*Ibid.*) In this case, our inquiry ends when we conclude the trial court acted within its discretion to exclude cross-examination questions with marginal impeachment value.

After expert commented it was "unique" that defendant's massage parlor was open on Christmas, the trial court permitted defense counsel to ask expert: (1) whether he had been to a Chinese restaurant on Christmas Eve; (2) whether he knew any Jewish people and the joke that Jewish people celebrate Christmas at Chinese restaurants; (3) whether he knew that businesses are open on Christmas Eve and Christmas Day; (4) whether he assumed that every business celebrates Christmas by shutting down; (5) whether he would get a massage on Christmas Eve and Christmas Day; and (6) whether he could name businesses that are open on Christmas Eve and Christmas Day. The trial court sustained objections to questions about: (1) whether expert celebrated Christmas; (2) whether expert worked on Christmas Eve; (3) whether expert was aware that Buddhism is the predominant religion in China; and (4) whether expert received any cultural awareness training.

Through the permitted line of cross-examination, defense counsel impeached expert on implicit racial bias by showing the jury that expert was unaware of Chinese restaurants staying open on Christmas and assumed most normal businesses close in

celebration of Christmas.  Defendant argues that the questions about expert's holiday practices, knowledge of religions in China, and cultural training would explain why expert was racially biased.  But such an explanation had marginal impeachment value because it does not tend to prove or disprove the existence of racial bias.  In conclusion, the trial court acted within its discretion to exclude marginally valuable cross-examination questions.

III

*Admission of Google Maps Printout*

Defendant contends the trial court prejudicially erred in admitting into evidence a Google Maps printout showing the drive time between her beauty appointment and the massage parlor because it lacked foundation and was a hearsay statement.  We conclude that the printout was erroneously admitted because it lacked foundation, but the error was harmless.  As such, we need not decide whether the printout was also hearsay.

*A. Additional Background*

The undercover officer who visited defendant's massage parlor on January 10, 2019, testified that he arrived at 2:00 p.m. and waited between 20 to 30 minutes before defendant started the massage.  The conversation between defendant and the undercover officer was recorded by a monitoring device that the officer hid in his shoe.  The jury heard the audio recording from the device.  Portions of the audio recording were unintelligible, including the part where defendant and the officer negotiated prices.  The officer explained to the jury that defendant was whispering during the negotiation.

Defendant testified she had a 20-minute appointment at a cosmetic surgery center on January 10, 2019, at 1:50 p.m. and the appointment did not start until between 2:00 p.m. and 2:25 p.m.  She also stated it would take her 15 minutes to drive from the cosmetic surgery center to her massage parlor.  On cross-examination, the trial court permitted the prosecutor to introduce a Google Maps printout showing the drive time between the two locations as five to seven minutes, overruling defense counsel's hearsay

11

and foundation objections.  Defendant disputed the accuracy of the drive time, arguing it would take much longer to drive between the two locations in the afternoon.

In closing, defense counsel argued that defendant could not have been at the massage appointment on January 10, 2019, because of her beauty appointment.

### B.  Foundation

Under the secondary evidence rule, the content of a writing may be proved by otherwise admissible secondary evidence.  (*People v. Goldsmith* (2014) 59 Cal.4th 258, 269, citing Evid. Code, § 1521, subd. (a).)  "Authentication of a writing is required before secondary evidence of its content may be received in evidence."  (Evid. Code, § 1401, subd. (b).)  "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law."  (Evid. Code, § 1400.)

"A printed representation of computer information or a computer program is presumed to be an accurate representation of the computer information or computer program that it purports to represent."  (Evid. Code, § 1552.)  But this presumption "operates to establish only that a computer's print function has worked properly." (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1450.)  It does not fully supply the necessary foundation for admission of a printout because the secondary evidence rule does not excuse compliance with authentication.  (*People v. Goldsmith, supra*, 59 Cal.4th at p. 271, citing Evid. Code, § 1521, subd. (c).)

Here, the prosecutor made no attempt to lay a foundation for the Google Maps drive time calculation result.  She introduced no evidence to show how and when Google Maps was accessed, or what information, such as addresses, departure or arrival time, or route preferences, was put into Google Maps to generate the drive time.  Although the printout was self-authenticating, as the People argue, the Google Maps drive time itself

was not authenticated.  Thus, the trial court erred in admitting the Google Maps printout because it lacked foundation.  We next consider whether this error was harmless.

We review the erroneous admission of evidence for prejudice under *People v. Watson* (1956) 46 Cal.2d 818, which requires reversal only if it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.  (*People v. Rouston* (2024) 99 Cal.App.5th 997, 1016.)  When evaluating an error, we consider " 'whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' "  (*People v. Beltran* (2013) 56 Cal.4th 935, 956.)

Here, it is not reasonably probable that the Google Maps printout would have affected the verdict.  The undercover officer testified he had a massage appointment with defendant and during the appointment, defendant repeatedly touched his private areas and held his penis while they negotiated prices.  This conversation was recorded, and the recording was played to the jury.  Although parts of the audio recording were unintelligible, including the conversation about prices, the recording still proved that the massage appointment between the undercover officer and defendant occurred.[2]  Indeed, because the jury could not hear the price negotiation from the recording, they must have relied solely on the officer's testimony that defendant agreed to perform a sex act in exchange for money in finding defendant guilty of soliciting prostitution.  Thus, even absent the Google Maps printout, it was not reasonably probable for the jury to find the massage did not happen.

---

[2] Defendant does not challenge the admissibility of the audio recording in her opening brief but questions its authenticity for the first time in her reply brief.  "[W]e do not consider an argument first raised in a reply brief."  (*People v. Newton* (2007), 1005.)

Having concluded the admission of the Google Maps printout was harmless, we need not address whether it was also hearsay.


DISPOSITION

The judgment is affirmed.


/s/
MESIWALA, J.


We concur:


/s/
KRAUSE, Acting P. J.


/s/
WISEMAN, J.*

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.